Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Jacob P. Dini, *pro hac vice*
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS VOSTERMANS, an individual, also known as CRUZZCONTROL; and CREATINEOVERDOSE, an individual,<br><br>Defendant. | Case No. 4:21-cv-7006-JST<br><br>**PLAINTIFF'S EX PARTE APPLICATION TO SERVE DEFENDANT CREATINEOVERDOSE VIA ALTERNATIVE MEANS AND TO CONTINUE CASE MANAGEMENT CONFERENCE AND RELATED DEADLINES**<br><br>[L. CIV. R. 7-10 and 7-11] |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Twitch Interactive, Inc. ("Twitch") will and hereby does apply to the Court *ex parte* for an order pursuant to Federal Rules of Civil Procedure 4(f)(3) for leave to serve Defendant CreatineOverdose via alternative means, and to continue the Case Management Conference and related deadlines. This application complies with Civil Local Rule 7-10 because, as explained in the application, Twitch has notified CreatineOverdose of this lawsuit via email but does not possess the information necessary to serve CreatineOverdose via traditional means despite due diligence. *See, e.g.*, *Johnson v. Umbarger LLC*, No. 20-CV-06542-LHK, 2021 WL 292192, at *3 (N.D. Cal. Jan. 28, 2021) (granting *ex parte* application for alternative service); *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, No. 5:18-CV-04543-EJD (N.D. Cal. Aug. 7, 2018) (same). The parties could not stipulate to this application, pursuant to Civil Local Rule 7-11(a), because CreatineOverdose has not responded to any attempts at a dialogue.

Twitch seeks an order from the Court under Federal Rule of Civil Procedure 4(f)(3) granting leave for Twitch to serve CreatineOverdose by publication. This application is made on the grounds that Twitch has exercised reasonable diligence to locate CreatineOverdose, that Twitch's emails to CreatineOverdose are now being returned as undeliverable despite initially being successfully delivered, that CreatineOverdose has actual notice of this lawsuit as a result of such emails, that CreatineOverdose is evading service of process, and that CreatineOverdose cannot be otherwise located, identified, or served despite an extensive investigation and subpoenas targeting CreatineOverdose's known aliases and accounts. Good cause exists to extend the Case Management Conference and related deadlines because, without having been served or otherwise engaging in the litigation, CreatineOverdose cannot participate in those activities as currently scheduled. In addition, on September 1, 2022, Twitch applied for leave to amend the pleadings and add an additional defendant. Dkt. No. 35. The application is based upon the following Memorandum of Points and Authorities, the Declaration of Katherine Dugdale and exhibits thereto, filed concurrently herewith, all pleadings and papers on file, and on

1 such additional evidence or arguments as the Court may deem proper.

Dated:  September 6, 2022         **PERKINS COIE LLP**

By: s/ Katherine M. Dugdale
    Katherine M. Dugdale, Bar No. 168014
    KDugdale@perkinscoie.com
    Jacob P. Dini, *pro hac vice*
    JDini@perkinscoie.com

*Attorneys for Plaintiff*
Twitch Interactive, Inc.

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 8

II. BACKGROUND .............................................................................................................. 9

    A.  Plaintiff Twitch Interactive, Inc. ......................................................................... 9

    B.  Defendant CreatineOverdose ............................................................................... 9

III. ARGUMENT .................................................................................................................. 12

    A.  International Agreement Does Not Prohibit Service by Publication. .................. 12

    B.  Service by Publication Is Reasonably Calculated to Provide Notice to CreatineOverdose. ............................................................................................... 14

    C.  A 90-day Extension of Time to Allow Twitch to Complete Service is Appropriate. ......................................................................................................... 15

    D.  Good Cause Also Exists to Reset the Case Management Conference and Related Deadlines. ............................................................................................... 17

IV. CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*ADT Sec. Services, Inc. v. Security One Intern., Inc.*,
  No. 11 CV 05149 YGR, 2012 WL 3580670 (N.D. Cal. 2012).................................................15

*California Beach Co., LLC v. Exqline, Inc.*,
  No. 20-CV-01994-TSH, 2020 WL 8675427 (N.D. Cal. July 7, 2020)...................................12

*Chien Van Bui v. City & Cty. of San Francisco*,
  No. 11-CV-04189-LB, 2018 WL 4959056 (N.D. Cal. Jan. 31, 2018).....................................17

*D.Light Design, Inc. v. Boxin Solar Co.*,
  No. C-13-5988 EMC, 2015 WL 526835 (N.D. Cal. Feb. 6, 2015)...................................13, 15

*Fabian v. LeMahieu*,
  No. 4:19-CV-00054-YGR, 2020 WL 3402800 (N.D. Cal. June 19, 2020) ..............................12

*Future Motion, Inc. v. Doe*,
  No. 21-CV-03022-JSC, 2021 WL 3052594 (N.D. Cal. July 20, 2021)...................................15

*Goes Int'l, AB v. Dodur Ltd.*,
  No. 14-CV-5666 LB, 2015 WL 1743393 (N.D. Cal. Apr. 16, 2015) .......................................13

*Hearst v. West*,
  31 F. App'x 366 (9th Cir. 2002) ...............................................................................................16

*Hendry v. Schneider*,
  116 F.3d 446, 449 (10th Cir.1997)); ........................................................................................16

*Higley v. Cessna Aircraft Co.*,
  No. CV 10-3345-GHK, 2012 WL 12878652 (C.D. Cal. Sept. 18, 2012)................................16

*In re Sheehan*,
  253 F.3d 507, 513 (9th Cir. 2001).............................................................................................17

*Indep. Film Dev. Corp. v. Junior Cap. Inc.*,
  No. CV1300259BRORNBX, 2015 WL 12778352 (C.D. Cal. July 9, 2015) ....................13, 14

*Intercontinental Indus. Corp. v. Luo*,
  No. CV 10-4174-JST EX, 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011).........................13

*Intrade Indus., Inc. v. Foreign Cargo Mgmt. Corp.*,
  No. 1:07-CV-1893, 2008 WL 5397495 (E.D. Cal. Dec. 24, 2008) .........................................16

*JBR, Inc. v. Café Don Paco, Inc.*,
  No. 12-CV-02377 NC, 2013 WL 1891386 (N.D. Cal. May 6, 2013).....................................16

*Johnson v. Mao Ge Bascom LLC*,
  No. 16-CV-04169-HRL, 2017 WL 2572593 (N.D. Cal. June 14, 2017) .................................. 17

*Johnson v. Umbarger LLC*,
  No. 20-CV-06542-LHK, 2021 WL 292192 (N.D. Cal. Jan. 28, 2021) ...................................... 2

*Lumico Life Ins. Co. v. Adams*,
  No. C20-5515-MLP, 2021 WL 22587 (W.D. Wash. Jan. 4, 2021) ......................................... 14

*Mann v. Am. Airlines*,
  324 F.3d 1088 (9th Cir. 2003) ..................................................................................... 16, 17

*Motley v. Parks*,
  No. CV0001472MMMBQRX, 2001 WL 849637 (C.D. Cal. July 23, 2001) ........................... 17

*Reflex Media, Inc. v. SuccessfulMatch.com*,
  No. 20-CV-06393-JD, 2021 WL 275545 (N.D. Cal. Jan. 27, 2021) ......................................... 14

*Rio Properties, Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................................................ 12

*Sec. & Exch. Comm'n v. China Sky One Med., Inc.*,
  No. CV1207543MWFMANX, 2013 WL 12314508 (C.D. Cal. Aug. 20, 2013) ....................... 15

*Sec. & Exch. Comm'n v. Pithapurwala*,
  No. CV 21-9384 PA, 2022 WL 2199939 (C.D. Cal. Mar. 11, 2022) ....................................... 14

*SEC v. Tome*,
  833 F.2d 1086 (2nd Cir. 1987) ................................................................................................ 15

*Teller v. Dogge*,
  No. 212CV00591JCMGWF, 2012 WL 13055490 (D. Nev. Aug. 9, 2012) ............................. 15

*Toyo Tire*, 2016 WL 1251008, at *3 ....................................................................................... 15

*United States v. Benson*,
  No. 19-CV-05454-TSH, 2019 WL 6612246 (N.D. Cal. Dec. 5, 2019) .................................... 13

*Wei v. State of Hawaii*,
  763 F.2d 370 (9th Cir. 1985) ................................................................................................... 16

*WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*,
  No. 5:18-CV-04543-EJD (N.D. Cal. Aug. 7, 2018) .................................................................. 2

*Zoosk, Inc. v. Dyle*,
  C 10-04545 LB, 2011 WL 635279 (N.D. Cal. Feb. 11, 2011) ................................................ 16

<1

<2

<3

<4

<5

<6

<7

<8

<9

<10

<11

<12

<13

<14

<15

<16

<17

<18

<19

<20

<21

<22

<23

<24

<25

<26

<27

<28

**STATUTES**

Cal. Civ. Proc. Code § 415.50(a) ...........................................................................................13

**OTHER AUTHORITIES**

Civil Local Rule 7-10 .............................................................................................................2

Civil Local Rule 7-11(a) .........................................................................................................2

Fed. R. Civ. P. 6(b)(1) ...........................................................................................................17

Federal Rule of Civil Procedure 4(e) ....................................................................................13

Federal Rules of Civil Procedure 4(f)(3) ........................................................................ passim

Hague Convention, Art. 1, 20 U.S.T. 361, 658 U.N.T.S. 163 ..............................................12

Local Rule 7-11 .....................................................................................................................17

Rule 4(f)(1) ............................................................................................................................12

Rule 4(m) ..............................................................................................................................15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Twitch Interactive, Inc. ("Twitch") respectfully requests an order pursuant to Fed. R. Civ. P. 4(f)(3) authorizing service of Defendant CreatineOverdose via publication. Twitch brought the present action against CreatineOverdose to stop them from using bots and other automated processes to harass members of the Twitch community with racist, sexist, and homophobic content. CreatineOverdose's conduct clearly violates the Twitch Terms of Service and Community Guidelines that they agreed to prior to using Twitch.tv and its affiliated network of websites ("Twitch Services"). It also harms Twitch and the millions of people who use the Twitch Services daily.

Defendant carried out their attacks entirely online using the alias CreatineOverdose. To obscure their identity and evade Twitch's best policing efforts, CreatineOverdose created dozens of Twitch accounts, often using bots to create accounts at a robotic pace. The email address provided by CreatineOverdose when creating their original Twitch account was also disabled shortly after Twitch sent CreatineOverdose an email with a copy of the Complaint, Summons, and a Waiver of Service of Summons, along with other documents related to the case. Despite its diligent efforts, Twitch has been unable to determine CreatineOverdose's identity or physical address. Accordingly, Twitch seeks leave to serve CreatineOverdose via publication. Such service is reasonably calculated to provide CreatineOverdose notice of this lawsuit, particularly given past communication and CreatineOverdose's efforts to avoid identification.

Twitch also seeks an extension of the Case Management Conference and related deadlines because Twitch is still in the process of serving CreatineOverdose and Twitch recently sought leave to file an amended complaint to add an additional defendant. Holding the Case Management Conference now, before Twitch has effectuated service, would waste judicial and party resources.

## II. BACKGROUND

### A. Plaintiff Twitch Interactive, Inc.

Twitch is one of the world's leading services for content creators to stream content as part of a social, interactive community. In 2020, Twitch users watched over 1 trillion minutes of content, and Twitch.tv had 30 million average daily visitors. Amended Complaint ("Compl.") (Dkt. No. 16) at ¶ 1.[1] While watching streams, visitors can use Twitch's chat function to interact in real time with the Twitch streamer they are watching and other viewers of the stream. *Id.* at ¶¶ 20-21. People who use the Twitch chat function must create an account and agree to Twitch's Terms of Service and Community Guidelines (collectively, the "Terms"). *Id.* at ¶ 27. All visitors to the Twitch Services, regardless of whether they create an account or not, are bound by the Twitch Terms of Service and Community Guidelines. *Id.*

The safety of the Twitch community is Twitch's top priority. To ensure that Twitch's community remains safe and enjoyable for all users, Twitch strictly forbids harassment, threats, and hateful conduct. *Id.* at ¶¶ 2, 30. The Twitch Terms also specifically ban "discrimination, denigration, harassment, or violence based on the following protected characteristics: race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender identity, sexual orientation, disability, serious medical condition, and veteran status." *Id.* at ¶¶ 2, 34. Twitch users who are banned for violating the Terms are prohibited from accessing Twitch in the future. *Id.* at ¶ 29.

### B. Defendant CreatineOverdose

Beginning in or about August 2021, CreatineOverdose began coordinating attacks on Twitch streamers and their viewers by flooding those communities with hateful language and content. *Id.* CreatineOverdose worked with others to perpetuate the attacks (colloquially known, and referred to hereafter, as "hate raids"), which involved posting in a streamer's chat hate-filled and obscene text, including racial and homophobic slurs, personally identifying information, and

---

[1] At the time of filing, Twitch has recently filed an *ex parte* application for leave to file a second amended complaint. Dkt. No. 35. While some of the paragraph numbering is altered in the proposed amendments, all of the substantive factual allegations against CreatineOverdose cited herein are otherwise unaffected.

malicious links (such as to gore-filled and violent videos) over a short period of time. *Id.* at ¶¶ 42–43. Twitch worked quickly to stop the hate raids, but CreatineOverdose evaded Twitch's moderation efforts (and those of the affected streamers) by using fraudulently created "bot" accounts, created for the sole purpose of launching large scale, automated hate raids. *Id.* at ¶ 43. CreatineOverdose has been linked directly to the hate raids. On August 15, 2021, CreatineOverdose demonstrated how bot software could be used to spam Twitch channels with racial slurs, graphic descriptions of violence against minorities, and claims that the hate raiders are the "K K K." *Id.* ¶ 48. Hate raid victims documented CreatineOverdose participating in the attacks on their channels. *Id.* ¶¶ 49, 57.

Since the attacks, Twitch has diligently investigated CreatineOverdose and other possible perpetrators. Declaration of Katherine M. Dugdale in Support of *Ex Parte* Motion for Alternative Service ("Dugdale Decl.") ¶¶ 3-4. These ongoing investigations have successfully uncovered the identity of two other defendants, CruzzControl and Mango. *Id. at* ¶¶ 3–4 and 11–12. Twitch amended its complaint on October 21, 2021 to name CruzzControl and applied for leave on September 1, 2022 to amend the pleadings and add Mango as a defendant. Dkt. Nos. 16, 35. Twitch also took action to combat the hate raids, including banning CreatineOverdose's known accounts, updating Twitch's software to add additional measures that better detect malicious bot software, and implementing stricter identity controls. *Id.* ¶¶ 52, 58–59; Dugdale Decl. ¶ 4.

However, despite its continued efforts, Twitch has not been able to identify and locate CreatineOverdose. Dugdale Decl. ¶ 13. Twitch identified (and banned) a number of alternate accounts created by CreatineOverdose, but CreatineOverdose took substantial steps to hide their identity. For example, CreatineOverdose used tool(s) to hide their true IP address and location and used multiple "dummy" email accounts. *Id.* ¶ 6. Twitch also searched public sources in an effort to identify CreatineOverdose, including by using information Twitch uncovered about CreatineOverdose in thorough internet searches of social media and video-game related communities. *Id.* ¶ 7. Twitch's investigation uncovered additional information about the believed sources of the hate raids and identified more individuals, beyond CreatineOverdose, that

were potentially involved. *Id.* ¶ 11.  Twitch served a subpoena on Discord to identify these individuals and seek additional information on CreatineOverdose. *Id.* ¶ 12.  On March 2, 2022, it received documents produced in response to that subpoena, which included email addresses, phone numbers, and IP addresses associated with hate raids perpetrators. *Id.*  Twitch actively reviewed these documents as part of its investigation to identify CreatineOverdose and any other individuals involved. *Id.*  As a result of the production from Discord, Twitch served a subpoena on Google on April 4, 2022, seeking identifying information associated with the Gmail addresses connected to CreatineOverdose and other persons of interest. *Id.*  Google produced an initial response on April 29, 2022 and discussions continued for months regarding additional responsive documents. *Id.*  While these Subpoenas resulted in useful information about other individuals involved in the hate raids, they did not uncover identifying information about CreatineOverdose and instead further supported Twitch's belief that CreatineOverdose is actively attempting to evade service. *Id.* ¶ 13.

   Twitch did however successfully identify the email address Defendant CreatineOverdose used when they initially signed up for Twitch: goomlygoom@gmail.com. *Id.* at ¶ 8.  On October 22, 2021, Twitch's counsel sent an email to this address informing CreatineOverdose of this lawsuit and attaching a copy of, among other things, the Complaint, Summons, and a Waiver of Service of Summons. *Id.* at ¶ 9 & Ex. A.  This email did not bounce back or return any other errors suggesting the email address was inactive.  Dugdale Decl. at ¶ 9.  Several weeks later, counsel served on CreatineOverdose (via this same email address) a copy of the motion for expedited discovery Twitch filed with this Court. *Id.* at ¶ 10 & Ex. B.  That correspondence did bounce back, however, suggesting CreatineOverdose received the initial email and disabled it to evade detection.  Dugdale Decl. at ¶ 10 & Ex. B.  Information provided by Google in discovery shows that the goomlygoom@gmail.com email address was logged into twice on October 24, 2021, two days after the summons and complaint were emailed, and last logged into on October 26, 2021.  Dugdale Decl. at ¶12.

   Despite these diligent efforts to uncover more information about CreatineOverdose,

Twitch has been unable to determine their name or physical address. Dugdale Decl. at ¶ 13. Twitch believes that CreatineOverdose may reside in Vienna, Austria, but cannot confirm their current whereabouts or street address. *Id.* at ¶ 5.

### III.   ARGUMENT

Rule 4(f)(3) of the Federal Rules of Civil Procedure provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). The Ninth Circuit has interpreted Rule 4(f)(3) to allow service on foreign defendants by alternative means where the defendants were unreachable by other means or had no known physical address. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002). A plaintiff does not need to attempt service through other means prior to serving a defendant under Rule 4(f)(3). *Id.* at 1014–15. To that end, service under Rule 4(f)(3) is "neither a last resort nor extraordinary relief," and such service is left "to the sound discretion of the district court." *Id.* at 1015–1016 (internal quotes omitted); *Fabian v. LeMahieu*, No. 4:19-CV-00054-YGR, 2020 WL 3402800, at *2 (N.D. Cal. June 19, 2020). To establish that alternative service is appropriate in a given case, a plaintiff must show only that (1) international agreement does not prohibit the means of service, and (2) that such service is "reasonably calculated to provide actual notice" to the defendant. *Rio Properties*, 284 F.3d at 1014, 1016; *California Beach Co., LLC v. Exqline, Inc.*, No. 20-CV-01994-TSH, 2020 WL 8675427, at *2 (N.D. Cal. July 7, 2020). Twitch readily makes both showings here.

### A.   International Agreement Does Not Prohibit Service by Publication.

Service on CreatineOverdose by publication is not prohibited by international agreement. As referenced in Rule 4(f)(1), the primary international agreement governing service of process abroad is the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). *Rio Properties*, 284 F.3d at 1015 n.4. But because Twitch is unable to identify CreatineOverdose's physical addresses despite due diligence, the Hague Convention does not apply. Hague Convention, Art. 1, 20 U.S.T. 361, 658

U.N.T.S. 163 ("This Convention shall not apply where the address of the person to be served with the document is not known."); *see also D.Light Design, Inc. v. Boxin Solar Co.*, No. C-13-5988 EMC, 2015 WL 526835, at *2 (N.D. Cal. Feb. 6, 2015) ("Because the physical addresses of these Defendants are unknown, the Hague Convention does not apply."); *Goes Int'l, AB v. Dodur Ltd.*, No. 14-CV-5666 LB, 2015 WL 1743393, at *3 (N.D. Cal. Apr. 16, 2015) (noting that the Hague Convention does not apply if defendants' "physical addresses are unknown").

Even if it were to apply, the Hague Convention does not prohibit service by publication. *See Indep. Film Dev. Corp. v. Junior Cap. Inc.*, No. CV1300259BRORNBX, 2015 WL 12778352, at *3 (C.D. Cal. July 9, 2015) (noting that "the Court finds no language indicating that [the Hague Convention] prohibits service by publication," and collecting cases that reached the same conclusion); *Intercontinental Indus. Corp. v. Luo*, No. CV 10-4174-JST EX, 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011) (noting that "the Hague Convention does not prohibit service by publication" so long as the signatory country does not object). Twitch's investigation suggests that CreatineOverdose may live in Austria. *See* Dugdale Decl. ¶ 5. In its declaration regarding the Hague Convention, Austria does not object to service by publication. *See* Hague Convention, Status Table 14, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17, last visited August 31, 2022. Moreover, no other international agreement applies or prohibits service of process by publication. *Intercontinental Indus. Corp*, 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011) ("[T]he Hague Convention does not prohibit service by publication…. The Court is also not aware of any other international agreement that does so."). Accordingly, no international agreement prohibits Twitch from serving CreatineOverdose via publication.[2]

---

[2] Even if CreatineOverdose were not located outside of the U.S., as Twitch believes, service by publication would still be appropriate. "Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual in the United States using any method permitted by the law of the state in which the district court is located or in which service is affected." *United States v. Benson*, No. 19-CV-05454-TSH, 2019 WL 6612246, at *2 (N.D. Cal. Dec. 5, 2019). Further, under California law, "[a] summons may be served by publication . . . if it appears to the satisfaction of the court . . . that the party to be served cannot with reasonable diligence be served in another manner [and] . . . [a] cause of action exists against the party upon whom service is to be made." Cal. Civ. Proc. Code § 415.50(a). For the reasons laid out in this *ex parte* application, service by

-13-

158139967.4

**B.    Service by Publication Is Reasonably Calculated to Provide Notice to CreatineOverdose.**

Courts consistently uphold service by publication as reasonably calculated to give actual notice to otherwise unreachable defendants. *See, e.g.*, *Sec. & Exch. Comm'n v. Pithapurwala*, No. CV 21-9384 PA (AFMX), 2022 WL 2199939, at *3 (C.D. Cal. Mar. 11, 2022) ("The Court concludes that service through email and publication is reasonably calculated to provide . . . notice of this action" to the foreign defendant); *Indep. Film Dev. Corp.*, No. CV1300259BRORNBX, 2015 WL 12778352, at *4 (C.D. Cal. July 9, 2015).

Alternative service is "all the more warranted" when a defendant attempts to avoid identification and service by traditional means. *Reflex Media, Inc. v. SuccessfulMatch.com*, No. 20-CV-06393-JD, 2021 WL 275545, at *3 (N.D. Cal. Jan. 27, 2021); *see also Lumico Life Ins. Co. v. Adams*, No. C20-5515-MLP, 2021 WL 22587, at *3 (W.D. Wash. Jan. 4, 2021) ("Service by publication was authorized . . . because the affidavits filed demonstrated diligence in attempting to serve the defendant while also supporting an inference the defendant in that case intended to evade service of process.") (internal citations omitted).  Here, in perpetuating the hate raids, CreatineOverdose hid behind online pseudonyms, did not provide Twitch with a real name or addresses despite using the Twitch Services, and has not responded to attempts at communication.  After diligent investigation, the most reliable information Twitch has about CreatineOverdose is the email address they provided when creating the original CreatineOverdose Twitch account, before the hate raids began and before Twitch banned the account.  This account, however, was disabled shortly after Twitch sent information about the present case, seemingly in an attempt to evade service, and can no longer be used to effectuate service.  Dugdale Decl. at ¶ 10 & Ex. B.

Because counsel for Twitch has successfully sent messages to the email address associated with CreatineOverdose, alternative service is all the more appropriate.  Where, as here, initial emails sent to addresses associated with the defendant are not bounced back or returned as undeliverable, courts consistently find that service to those email addresses is "reasonably publication is justified under California law.

calculated to give actual notice." *Future Motion, Inc. v. Doe*, No. 21-CV-03022-JSC, 2021 WL 3052594, at *2 (N.D. Cal. July 20, 2021) (citing *Toyo Tire*, 2016 WL 1251008, at *3); *see also D.Light Design*, 2015 WL 526835, at *3 (finding service by email appropriate in part because "Plaintiffs' email . . . was delivered successfully and did not bounce back as undeliverable"); *ADT Sec. Services, Inc. v. Security One Intern., Inc.*, No. 11 CV 05149 YGR, 2012 WL 3580670, at *2 (N.D. Cal. 2012) (finding service by email reasonable where emails sent to the address "have not been returned as undeliverable"). In the same vein, service by publication is particularly justified where there is some evidence that the defendant has actual notice of the suit beforehand. *See Sec. & Exch. Comm'n v. China Sky One Med., Inc.*, No. CV1207543MWFMANX, 2013 WL 12314508, at *4 (C.D. Cal. Aug. 20, 2013) ("[A]n important factor weighing strongly in favor that service by publication . . . comports with due process is the fact that [evidence] indicates that both defendants are already aware of this matter."); *Teller v. Dogge*, No. 212CV00591JCMGWF, 2012 WL 13055490, at *2 (D. Nev. Aug. 9, 2012).

CreatineOverdose's attempts to evade service by hiding their true identity and disabling their email after receiving notice of Twitch's complaint should not be rewarded. Twitch proposes serving CreatineOverdose by publishing information about the pendency of this action in a newspaper of global circulation, such as the International New York Times,[3] in the form submitted with the Declaration of Katherine Dugdale. *See* Dugdale Decl. ¶ 15 & Ex. C. If permitted, Twitch would publish this notice weekly for four consecutive weeks.

### C.  A 90-day Extension of Time to Allow Twitch to Complete Service is Appropriate.

Twitch also requests a 90-day extension of time to allow it to effect service via publication. Rule 4(m) "*requires* a district court to grant an extension of time if good cause is

---

[3] The International New York Times (formerly known as the International Herald Tribune) is an English-language newspaper of general circulation throughout the world, and has been deemed an appropriate means of publication of the notice of a pending action under Rule 4(f)(3). *See, e.g., SEC v. Tome*, 833 F.2d 1086, 1091 (2nd Cir. 1987) (accepting publication in International Herald Tribune as alternative means of service satisfying requirements of due process); *SEC v. China Sky One Med., Inc.*, No. CV1207543MWFMANX, 2013 WL 12314508, at *4 (C.D. Cal. Aug. 20, 2013) (granting motion for service by publication in the International Herald Tribune, as well as by email, for international defendants).

shown and permits the district court to grant such an extension even absent good cause." *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 n.2 (9th Cir. 2003) (emphasis added). In determining whether a movant has shown good cause, courts have considered whether the plaintiff "attempted to serve the defendants" or "was prevented from effecting service within the . . . limit by factors beyond his control." *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985). Similarly, "Defendant's evasion of service or attempts to frustrate service have been found 'good cause' for delay in effecting service." *Intrade Indus., Inc. v. Foreign Cargo Mgmt. Corp.*, No. 1:07-CV-1893, 2008 WL 5397495, at *1 (E.D. Cal. Dec. 24, 2008) (citing *Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir.1997)); *see also Hearst v. West*, 31 F. App'x 366, 368 (9th Cir. 2002) ("A defendant's affirmative actions, which frustrate service, may constitute good cause for failure to effect timely service.").

Twitch has diligently attempted to serve CreatineOverdose and advance the present litigation and, as such, good cause exists for an extension. *See, e.g.*, *JBR, Inc. v. Café Don Paco, Inc.*, No. 12-CV-02377 NC, 2013 WL 1891386, at *7 (N.D. Cal. May 6, 2013) (finding that "diligence in attempting to locate defendants and serve them personally establishe[d] good cause"); *see also Zoosk, Inc. v. Dyle*, C 10-04545 LB, 2011 WL 635279, at *2 (N.D. Cal. Feb. 11, 2011) (finding good cause for an extension where plaintiff "engaged in good faith efforts to identify and serve Defendants by timely pursuing early discovery"). Moreover, CreatineOverdose's efforts to conceal their identity and physical location—by providing false information and masking their IP address—have made it difficult to locate and serve them. *See Wei*, 763 F.2d at 372. Twitch would also suffer prejudice without an extension, as the resources Twitch invested in bringing this action and in attempting to serve CreatineOverdose would be wasted. *See, e.g.*, *Higley v. Cessna Aircraft Co.*, No. CV 10-3345-GHK (FMOx), 2012 WL 12878652, at *2 (C.D. Cal. Sept. 18, 2012). Finally, as discussed above, there is also a strong inference that CreatineOverdose has actual notice of this suit, further supporting an extension. *Intrade Indus.*, 2008 WL 5397495, at *1.

Even if the Court finds that Twitch has not established good cause, the Court may still

exercise its discretion and extend the time for service. *Mann*, 324 F.3d at 1090 n.2; *Motley v. Parks*, No. CV0001472MMMBQRX, 2001 WL 849637, at *5 (C.D. Cal. July 23, 2001) ("[T]he court's discretion is broad.") (citing *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001)); *Johnson v. Mao Ge Bascom LLC*, No. 16-CV-04169-HRL, 2017 WL 2572593, at *2 (N.D. Cal. June 14, 2017). Regardless, because good cause does exist here, the Court should exercise its discretion and grant the extension.

### D. Good Cause Also Exists to Reset the Case Management Conference and Related Deadlines.

In this district, a motion to reschedule the Case Management Conference and related deadlines is a motion for administrative relief governed by Civil Local Rule 7-11. *See, e.g.*, *Chien Van Bui v. City & Cty. of San Francisco*, No. 11-CV-04189-LB, 2018 WL 4959056, at *1 (N.D. Cal. Jan. 31, 2018). A motion to reschedule the Case Management Conference and related deadlines may be granted for good cause. *See* Fed. R. Civ. P. 6(b)(1).

Good cause exists here. The Case Management Conference is scheduled for October 11, 2022. Dkt. No. 23. Because Twitch is still working to serve CreatineOverdose and has recently requested leave to amend its complaint to add an additional defendant (Dkt. No. 35), it would be premature to hold a Case Management Conference, file a Case Management Statement, and conduct a Rule 26(f) conference at this time. Accordingly, in the interest of justice and to enhance judicial efficiency and preserve resources, Twitch respectfully requests that the Case Management Conference be continued approximately 90 days to January 9, 2023, or a date thereafter the Court is available, and that all related deadlines be adjusted accordingly. The parties in this case could not stipulate to this request because CreatineOverdose has not responded to any attempts at a dialogue. Dugdale Decl. ¶ 14. There have been three previous scheduling modifications to this case. Dkt. Nos. 23, 30. The requested continuance will not impact the schedule of this case as no trial date or other deadlines, apart from the above, have been set. Dugdale Decl. ¶ 16.

### IV. CONCLUSION

For the foregoing reasons, Twitch respectfully requests an order from the Court under

Federal Rule of Civil Procedure 4(f)(3) granting leave for Twitch to serve CreatineOverdose by publication, extending Twitch's time for service by 90 days to allow time for service by publication, and continuing the Case Management Conference and related deadlines by approximately 90 days.

Dated: September 6, 2022                    **PERKINS COIE LLP**

By: s/ Katherine M. Dugdale
Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
Jacob P. Dini, *pro hac vice*
JDini@perkinscoie.com

*Attorneys for Plaintiff*
Twitch Interactive, Inc.

158139967.4