# EXHIBIT A

**Bacos, Caleb (SEA)**

---

| | |
|---|---|
| **From:** | Staniar, Lauren (SEA) |
| **Sent:** | Friday, October 22, 2021 3:19 PM |
| **To:** | 'goomlygoom@gmail.com' |
| **Cc:** | Dini, Jacob  (SEA) |
| **Subject:** | Twitch Interactive, Inc. v. Vostermans, et al, Case No. 21-cv-7006-JST (N.D. Cal.) |
| **Attachments:** | 2021-10-21 CreatineOverdose Service Packet.PDF |

Please see the attached correspondence regarding *Twitch Interactive, Inc. v. Vostermans, et al*, Case No. 21-cv-7006-JST (N.D. Cal.).

**Lauren Watts Staniar** | **Perkins Coie LLP**
COUNSEL
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3316
C. +1.202.400.0925
F. +1.206.359.4316
E. LStaniar@perkinscoie.com
Pronouns: she, her and hers

# PERKINSCOie

1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

**O** +1.206.359.8000
**P** +1.206.359.9000
PerkinsCoie.com

October 22, 2021

Jacob P. Dini
JDini@perkinscoie.com
D.  +1.206.359.3832
F.  +1.206.359.4832

**VIA EMAIL**

CreatineOverdose
goomlygoom@gmail.com

Re:     ***Twitch Interactive, Inc. v. Vostermans, et al.*, Case No. 21-cv-7006-JST (N.D. Cal.)**

Dear Sir or Madam:

We represent Plaintiff Twitch Interactive, Inc. in the above-referenced lawsuit filed against you. Attached please find a Notice of a Lawsuit and Request to Waive Service of a Summons as well as a Waiver of the Service of Summons.  <u>We ask that you review the documents and send an executed copy of the Waiver of the Service of Summons back to us promptly by email.</u>  Also attached please find the Amended Complaint and Summons, as well as other documents filed in and relevant to the above-referenced matter (complete list of attached documents below).

- Notice of a Lawsuit and Request to Waive Service of a Summons
- Waiver of the Service of Summons
- Complaint
- Civil Case Coversheet
- Plaintiff Twitch Interactive, Inc.'s Certificate of Interested Entities
- Plaintiff Twitch Interactive, Inc.'s Corporate Disclosure Statement
- Order Setting Initial Case Management Conference and ADR Deadlines
- Proposed Summons
- Summons
- Declination to Magistrate Judge Jurisdiction
- Order Reassigning Case
- Notice of Eligibility for Video Recording
- Clerk's Notice Setting Case Management Conference
- Application for Admission of Attorney Pro Hac Vice - Lauren Watts Staniar
- Order Granting Application for Admission of Attorney Pro Hac Vice - Lauren Watts Staniar
- Application for Admission of Attorney Pro Hac Vice - Jacob P. Dini
- Order Granting Application for Admission of Attorney Pro Hac Vice - Jacob P. Dini
- Amended Complaint
- Standing Order for All Civil Cases Before District Judge Jon S. Tigar

CreatineOverdose
October 22, 2021
Page 2

- Standing Order for Civil Jury Trials Before District Judge Jon S. Tigar
- Standing Order Governing Administrative Motions to File Materials Under Seal Before District Judge Jon. S. Tigar
- Standing Order for All Judges of the Northern District of California - Contents of Joint Case Management Statement
- ECF Registration Information
- Consent or Declination to Magistrate Judge Jurisdiction
- Docket Report

If you are represented in this matter, please provide this correspondence to your attorney.

Sincerely,

Jacob P. Dini

JPD:jpd

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| Twitch Interactive, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Chris Vostermans; and CreatineOverdose | ) |
| *Defendant* | ) |

Civil Action No.   21-cv-7006-JST

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:   CreatineOverdose

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court.  It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must return the signed waiver within ___60___ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court.  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you.  And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:   10/22/2021

/s/ Katherine M. Dugdale

*Signature of the attorney or unrepresented party*

Katherine M. Dugdale

*Printed name*

1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721

*Address*

KDugdale@perkinscoie.com

*E-mail address*

310.788.9900

*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| Twitch Interactive, Inc. | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   21-cv-7006-JST |
| Chris Vostermans; and CreatineOverdose | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To:   Katherine M. Dugdale

      *(Name of the plaintiff's attorney or unrepresented plaintiff)*

     I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

     I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

     I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

     I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from    10/22/2021   , the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____

*Signature of the attorney or unrepresented party*

         CreatineOverdose

*Printed name of party waiving service of summons*               *Printed name*

                                                     *Address*

                                                 *E-mail address*

                                             *Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

     Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

     "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

     If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

     If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

1   Katherine M. Dugdale, Bar No. 168014
    KDugdale@perkinscoie.com
2   PERKINS COIE LLP
    1888 Century Park E., Suite 1700
3   Los Angeles, CA 90067-1721
    Telephone: 310.788.9900
4   Facsimile: 310.788.3399

5   Lauren Watts Staniar, *pro hac vice* forthcoming
    LStaniar@perkinscoie.com
6   Jacob Dini, *pro hac vice* forthcoming
    JDini@perkinscoie.com
7   PERKINS COIE LLP
    1201 Third Avenue, Suite 4900
8   Seattle, WA 98101-3099
    Telephone: 206.359.8000
9   Facsimile: 206.359.9000

10  Attorneys for Plaintiff
    Twitch Interactive, Inc.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

16  TWITCH INTERACTIVE, INC., a           Case No. 3:21-cv-07006
    Delaware corporation,
17                                         COMPLAINT FOR:
              Plaintiff,
18                                         (1) BREACH OF CONTRACT
         v.                                (2) FRAUD IN THE INDUCEMENT
19                                         (3) UNFAIR COMPETITION (CAL. BUS. &
    CRUZZCONTROL, an individual;           PROF. CODE § 17200)
20  CREATINEOVERDOSE, an individual,
                                           DEMAND FOR JURY TRIAL
21            Defendants.

22

23                      I.    INTRODUCTION

24       1.       Twitch Interactive, Inc. ("Twitch") is one of the world's leading services for

25  content creators to stream content as part of a social, interactive community. Each month,

26  millions of people come together to create their own entertainment: live, never-to-be repeated

27  experiences created by the magical interactions of the many. In 2020, users watched over 1

28                                     -1-

153823186.1

trillion minutes of content, and Twitch.tv had 30 million average daily visitors. Twitch's success is due in part to the measures it has taken to create a safe and accessible community for its millions of users.

2. The safety of Twitch's community is its top priority. For this reason, Twitch forbids harassment and threats on the Twitch Services. Its Terms of Service prohibit users from creating, uploading, transmitting, or streaming any content that is unlawful, defamatory, obscene, pornographic, harassing, threatening, abusive, or otherwise objectionable. As expressed in its Community Guidelines ("Guidelines"), Twitch does not tolerate hateful conduct and harassment. Twitch specifically bans "discrimination, denigration, harassment, or violence based on the following protected characteristics: *race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender identity, sexual orientation, disability, serious medical condition, and veteran status*." Twitch has "zero tolerance for hateful conduct . . . ."

3. Beginning in or about August 2021, Defendants began flooding Twitch streamers with hateful conduct. This type of targeted attack is known colloquially as a "hate raid." These hate raids often target streamers from marginalized groups. Defendants attack these streamers by flooding their chats with bot-powered Twitch accounts that spew racist, sexist, and homophobic language and content.

4. Twitch took swift action against Defendants by suspending and eventually permanently banning Defendants' known Twitch accounts. Defendants were undeterred. They evaded Twitch's bans by creating new, alternate Twitch accounts, and continually altering their self-described "hate raid code" to avoid detection and suspension by Twitch.

5. Defendants' actions seriously harmed and will continue to harm the Twitch community. Streamers who were the victims of hate-raids experienced mental health issues, and

-2-

some have reported cutting back on streaming to avoid persistent harassment.[1]  Members of the community have called on Twitch to prevent the raids.

6.     Twitch expended significant resources investigating and banning Defendants, as well as implementing updated security measures intended to halt and prevent Defendants' unlawful actions.

7.     Despite these efforts, Defendants' actions are ongoing—they continue to promote and engage in hate raids.  If they are not stopped, Defendants will continue to harass and disrupt the Twitch community with hate raids.

8.     Twitch brings this action to end Defendants' unlawful, fraudulent and highly offensive activities, enforce its contracts with Defendants, and hold Defendants accountable.

## II.     JURISDICTION

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Twitch and Defendants and the amount in controversy exceeds $75,000.

10.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.  Defendants have repeatedly, knowingly, and intentionally accessed Twitch servers located in this district to undertake their unlawful activities.  While accessing Twitch servers, Defendants engaged in systematic and continuous contacts with this district and targeted their wrongful acts at Twitch, which is headquartered in this district.

---

[1] https://www.washingtonpost.com/video-games/2021/08/25/twitch-hate-raids-streamers-discord-cybersecurity/.

### III.  INTRADISTRICT ASSIGNMENT

11.     Assignment to the San Francisco Division or Oakland Division is proper under Local Civil Rule 3-2(d) because Twitch is located in San Francisco County, and the events described herein giving rise to this lawsuit took place primarily in San Francisco County.

### IV.  THE PARTIES

12.     Twitch is a Delaware corporation with its principal place of business in San Francisco.  Twitch operates the "Twitch Services," which are the website available at http://www.twitch.tv, and its network of websites, software applications, and any other products or services offered by Twitch.

13.     On information and belief, the Twitch user CruzzControl is an individual residing in Baarto, Netherlands.  CruzzControl is responsible in whole or in part for the wrongful conduct alleged herein.  CruzzControl operated and continues to operate accounts on the Twitch Services under aliases, including but not limited to CruzzControl, Zenobias_goat, bamiblok, lexfannr1 and nirger.  CruzzControl's acts described in this Complaint were intentionally directed toward Twitch within this judicial district, subjecting CruzzControl to personal jurisdiction.  Twitch will amend this Complaint if and when it uncovers CruzzControl's legal name.

14.     On information and belief, the Twitch user CreatineOverdose is an individual residing in Vienna, Austria.  CreatineOverdose is responsible in whole or in part for the wrongful conduct alleged herein.  CreatineOverdose operated and continues to operate accounts on the Twitch Services under various aliases, including but not limited to CreatineOverdose, CreatineBanEvades, CreatineReturns, and CreatineReported.  CreatineOverdose's acts described in this Complaint were intentionally directed toward Twitch within this judicial district, subjecting him to personal jurisdiction.  Twitch will amend this Complaint if and when it uncovers CreatineOverdose's legal name.

-4-

153823186.1

15.     Upon information and belief, each of the defendants was, at all times mentioned in this Complaint, acting as the agent, employee, or alter ego of every other defendant, and in doing the things mentioned herein, was acting within the course and scope of such agency, employment, or other relationship and with full knowledge and consent of each of the other defendants.

## V.     FACTS

**A.     Twitch**

16.     Twitch is a real-time streaming video service where community members gather to watch, play, and chat about shared interests—predominantly video games, sports, and creative arts.  Twitch was founded in 2011 and has been an Amazon subsidiary since 2014.

17.     On Twitch, streamers (those Twitch users who share live content on the service) pursue their interests to engage and entertain their viewers.  More than 7,000,000 unique streamers per month stream via Twitch's service.

18.     Streamers work extensively to create and foster authentic, passionate, and loyal communities on Twitch.  They do this in part by building an identity on Twitch outside of their work as a content creator.

19.     Twitch values the diversity of its community.  Twitch hosts millions of diverse individuals and has created programs to support creators of color and other individuals from marginalized groups.  For example, in May 2021 Twitch celebrated Asian & Pacific Islander Month to celebrate Asian & Pacific Islander creators from around the globe, spotlighting over 40 featured Asian & Pacific Islander creators and communities on Twitch and beyond.

20.     Twitch viewers and streamers use a chat function to communicate on Twitch.  Twitch chat is one of the Twitch Service's most popular features, and it is often integral in building a community around a Twitch channel or streamer.

-5-

153823186.1

21.     A streamer's "Stream Chat" panel is open any time that person is streaming on Twitch.  Community members post comments in the panel to encourage the streamer, provide support, and send Twitch-specific emojis.  Streamers can respond to messages in the chat.

22.     Streamers can set rules for their chats, and streamers frequently admonish participants not to use racist or offensive language.

23.     Users who only watch streams may, but are not required to, create an account on Twitch.  Streamers, however, must create an account.  And users who participate in Twitch's chat function are also required to create an account.

24.     Twitch provides streamers and developers with a variety of tools to bring streamers, viewers, and developers together on the Twitch service in new, engaging ways.  One such tool is the "Chatbot," in which developers can create programs that allow streamers to interact programmatically with their Twitch chat feed using preset standards.  For example, when a viewer types !dice into a streamers' chat, a simple chatbot created by a developer and used by the streamer may automatically respond by generating a number between 1-6.  Streamers can use chatbots for a variety of basic moderation tasks, including for example, automatically deleting messages in chats that contain links, solicit song requests from viewers, and organize in-chat games.

25.     But bots can also be used for nefarious, unauthorized purposes, despite Twitch's restrictions on such uses.  For example, a developer may create bot software designed to automatically spam a streamer's channel with thousands of messages in a short period of time, drowning out authentic conversation on the streamer's channel, or worse, promoting hateful or offensive content.

26.     Twitch forbids developers from "design[ing] bots that engage in offensive or deceptive practices (e.g., generate hate speech [or] send spam . . . .)."  And Twitch takes this

-6-

prohibition seriously, employing sophisticated methods to identify and stop unauthorized bot activity.

**B.     Twitch's Terms of Service and Community Guidelines**

27.     In order to create an account or otherwise use or access the Twitch Services or utilize the Twitch chat, a prospective user must agree to be bound by, among other things, Twitch's Terms of Service, Community Guidelines, and Twitch Developer Services Agreement (collectively, the "Terms").  Specifically, the Terms state: "The Terms of Service apply whether you are a user that registers an account with the Twitch Services or an unregistered user.  You agree that by clicking 'Sign Up' or otherwise registering, downloading, accessing or using the Twitch Services, you are entering into a legally binding agreement between you and Twitch regarding your use of the Twitch Services.  You acknowledge that you have read, understood, and agree to be bound by these Terms of Service."

28.     Twitch issues its users a limited, non-sublicensable license to access or use the Twitch Services for personal or internal business use only, provided that the user agrees to the Terms.  "Any use of the Twitch Services or the Materials except as specifically authorized in these Terms of Service, without the prior written permission of Twitch, is strictly prohibited and may violate intellectual property rights or other laws."

29.     The Terms explain that previously banned users may not access the Twitch Services: "The Twitch Services are also not available to any users previously removed from the Twitch Services by Twitch or to any persons barred from receiving them under the laws of the United States (such as its export and re-export restrictions and regulations) or applicable laws in any other jurisdiction."

153823186.1

30.     The Terms expressly prohibit anyone who accesses or uses the Twitch Services from harassing others on Twitch or posting racist, homophobic, violent, or otherwise harmful content.  Specifically, the Terms prohibit users from:

a.  creating, uploading, transmitting, or distributing "any content that is inaccurate, unlawful, infringing, defamatory, obscene, pornographic, invasive of privacy or publicity rights, harassing, threatening, abusive, inflammatory, or otherwise objectionable";

b.  "defam[ing], harass[ing], abus[ing], threaten[ing], or defraud[ing] users of the Twitch Services";

c.  interfering with or damaging "operation of the Twitch Services or any user's enjoyment of them, by any means, including uploading or otherwise disseminating viruses, adware, spyware, worms, or other malicious code";

d.  manipulating "identifiers in order to disguise the origin of any User Content transmitted through the Twitch Services";

e.  "attempt[ing] to circumvent any content filtering techniques [Twitch] employ[s], or attempt to access any service or area of the Twitch Services that you are not authorized to access";

f.  using "the Twitch Services for any illegal purpose, or in violation of any local, state, national, or international law or regulation, including, without limitation, laws governing intellectual property and other proprietary rights, data protection and privacy"; or

g.  "design[ing] bots that engage in offensive or deceptive practices (*e.g.*, generate hate speech, send spam, offer false follows, etc.)."

-8-

31.     The Guidelines, as part of the Terms, govern activity on Twitch with the goal of "provid[ing] the best shared social video experience created by our growing community where creators and communities can interact safely."

32.     "To achieve this goal, [Twitch] asks that all users participate in such a way that promotes a friendly, positive experience for" the Twitch global community."

33.     The Guidelines state that Twitch does not tolerate racist, homophobic, xenophobic, or otherwise harassing content such as that at issue here.

34.     The Guidelines provide that "[h]ateful conduct and harassment are not allowed on Twitch.  Hateful content is any content or activity that promotes or encourages discrimination, denigration, harassment, or violence based on the following protected characteristics: *race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender, gender identity, sexual orientation, disability, serious medical condition, and veteran status*."

35.     Under the Guidelines, "Twitch has zero tolerance for hateful conduct, meaning" Twitch acts "on every valid reported instance of hateful conduct."  Twitch "affords every user equal protections under this policy, regardless of their particular characteristics."

36.     The Guidelines state that "hostile raids" are a form of harassment, and expressly bans those raids on Twitch:  "Harassment has many manifestations, including stalking, personal attacks, promotion of physical harm, **hostile raids**, and malicious false report brigading."

37.     Twitch explains in the Guidelines that it "will take action on all instances of hateful conduct and harassment, with an increasing severity of enforcement when the behavior is targeted, personal, graphic, or repeated/prolonged, incites further abuse, or involves threats of violence or coercion.  The most egregious violations may result in an indefinite suspension on the first offense."

-9-

38.     The Guidelines make clear that Twitch will punish offensive conduct:  "To protect the integrity of our community, as the provider of the service, we at Twitch reserve the right to suspend any account at any time for any conduct that we determine to be inappropriate or harmful.  Such actions may include:  removal of content, a strike on the account, and/or suspension of account(s)."

39.     Twitch's efforts do not end with the posting of its Terms.  Twitch employs a Trust and Safety team that operates around the clock and around the globe to investigate and act in connection with violations of the Terms.

40.     Twitch also invests in technologies and processes that address potential risks to user safety, with the aim to create the best possible experience for streamers and their audiences.  For example, Twitch has implemented a banned word list.  And streamers can automatically filter out unwanted messages in their chat using AutoMod, a Twitch proprietary tool.  Twitch also offers tools that streamers can deploy to block or ban users from their audience and report them to Twitch's safety operations team.

41.     Twitch continuously works to improve its ability to detect and act upon violations of the Terms and is continuing to invest in technologies to support this effort.

**C.     Defendants' Unlawful Activity**

42.     Beginning in or about August 2021, Defendants began coordinating attacks on Twitch's streamers by raiding their channels and spamming those communities with hate (referred to hereafter as "hate raids").  These hate raids were, in some cases, directed to streamers who identified themselves as racial minorities and/or members of the LGBTQ+ community.

43.     Defendants conduct the hate-raids by flooding a streamer's chat with hate-filled and obscene text, including racial slurs, personally identifying information, and malicious links (such as links to gore videos intended to shock/offend) over a short period of time.  Defendants

-10-

are able to do this through the use of fraudulently created "bot" accounts, which are created for the sole purposes of launching large scale, automated attacks against Twitch's services and community. Defendants' bots permit them to spew hateful content at a robotic pace, often sending dozens of messages per minute that often outpace the targeted streamer's ability to moderate chat. Defendants claim that they can generate thousands of bots in minutes for this purpose.

44.     Defendants have deployed hate raids on Twitch in violation of the Terms. For example, from August 8-10, 2021, Defendant CruzzControl used bots to spam a Twitch channel with racial slurs and descriptions of violent acts against racial minorities and members of the LGBTQIA+ community. These Twitch usernames for these bots incorporated the term "cruzzcontrol" and "zenobia".

45.     On information and belief, Defendant CruzzControl is responsible for nearly 3,000 bot accounts associated with hate raids. Bots developed and deployed by CruzzControl have been linked to various hate raid events, including those targeting black and LGBTQIA+ streamers with racist, homophobic, sexist and other harassing content.

46.     CruzzControl has admitted to using bots to flood Twitch channels with harassing content. They have also demonstrated how the bots work so others can use similar methods to accomplish hate raids.

47.     Twitch has also linked CreatineOverdose directly to hate raids. For example, on August 15, 2021, Defendant CreatineOverdose used their bot software to demonstrate how it could be used to spam Twitch channels with racial slurs, graphic descriptions of violence against minorities, and claims that the hate raiders are the "K K K." Bots used in this demonstration contain unique usernames that Twitch later detected as being used to spam similar violent hate speech in numerous other Twitch channels.

-11-

48.      In addition to being highly offensive, the hate raids are also disruptive to the streamers' streams and authentic engagement from the streamers' intended viewers.  For example, victims of the hate raids may be forced to limit those who can use the chat feature on their streams to only the streamers' followers/paying subscribers, instead of the entire Twitch community, reducing the opportunity for genuine engagement between streamers and viewers that is essential to the Twitch Services.

49.      These attacks obstruct the chat so significantly, victimized streamers are unable to engage with their community through chat for the duration of the attack, and some even choose to avoid streaming altogether until the attack ends.  The attacks have pushed some victims to stop streaming on Twitch until the hate raids end, eliminating an important source of revenue for them.

50.      Twitch took swift action against the accounts and users that conducted the hate raids, immediately and permanently suspending them consistent with the Terms.  As part of this action, Twitch banned Defendants' known accounts.

51.      However, despite Twitch's best efforts, the hate raids continue.  On information and belief, Defendants created software code to conduct hate raids via automated means.  And they continue to develop their software code to avoid Twitch's efforts at preventing Defendants' bots from accessing the Twitch Services.

52.      On information and belief, Defendants work in concert with others in what one Defendant, CreatineOverdose, has described as the "hate raiding community" to perform these hate raids.

53.      On information and belief, Defendants coordinate their activities with the "hate raiding community" through other gaming-related social media platforms, including but not limited to Discord and Steam.

54.      Defendants' actions have harmed and continue to harm Twitch and its community.

-12-

153823186.1

55.     Streamers who Defendants targeted with hate raids were traumatized.  Many

streamers Tweeted their reactions to Defendants' actions.  The following are a few examples.



King Ace 👑💥🖤 | they/she @A_TypicalQueer · Aug 28          ···
These hate raiders are absolutely gross. They really made a whole
Instagram for ya queer AFTER trying to hack into my Twitter and Instagram
accounts. Also, peep the names of the accounts that followed me while I
was live 😌 let's be clever yall.

Octogeisha                                                   ···
@octogeisha

Heads up friends the following
foregathers, creatineoverdose, creatinereturns
all are known for hate raids  sending hate to disabled,
Lgbtqia+ and being extremely racist! please ban them
and if any of you know any more users please share
them
#TwitchDoBetter #LGBTQIA

56.     To further curb Defendants' hate-raids, Twitch updated its software to employ

additional measures that better detect malicious bot software in chat messages.

57.     Twitch expended significant resources combatting Defendants' attacks.  Twitch

spent time and money investigating Defendants, including through use of its fraud detection team.

Twitch also engineered technological and other fixes in an attempt to stop Defendants' harassing

and hateful conduct.  These updates include but are not limited to implementing stricter identity

controls with accounts, machine learning algorithms to detect bot accounts that are used to engage

in harmful chat and augmenting the banned word list.  Twitch mobilized its communications staff

to address the community harm flowing from the hate raids and assured its community that it was

taking proactive measures to stop them.  Twitch also worked with impacted streamers to educate

them on moderation toolkits for their chats and solicited and responded to streamers' and users'

comments and concerns.

-13-

153823186.1

1

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(California Common Law)**

2

3

58.     Twitch realleges and incorporates by reference the allegations in the preceding

4

paragraphs as if fully set forth herein.

5

59.     Access to and use of the Twitch Services is governed by and subject to the Terms.

6

7

60.     At all relevant times, Twitch prominently displayed and/or provided links to the

8

Terms.  Twitch users are presented with and must affirmatively accept the Terms to register for a

9

Twitch account.  Twitch users are presented with and must affirmatively accept the Terms to use

10

the Twitch chat function.

11

61.     The Terms provide that they apply "whether you are a user that registers an

12

account with the Twitch Services or an unregistered user.  You agree that by clicking 'Sign Up'

13

or otherwise registering, downloading, accessing, or using the Twitch Services, you are entering

14

into a legally binding agreement between you and Twitch regarding your use of the Twitch

15

16

Services."

17

62.     The Guidelines are incorporated into the Terms by reference.  A violation of the

18

Guidelines is a violation of the Terms.

19

63.     The Terms are binding on Defendants.  Each of the Defendants agreed to abide by

20

the Terms by creating a Twitch account, by using Twitch chat and/or any other Twitch Services,

21

and/or by accessing the Twitch Services.

22

23

64.     On information and belief, Defendants also agreed to be bound by the Twitch

24

Developer Services Agreement ("Developer Terms") when they accessed and used the Twitch

25

Developer Site and/or Twitch Services to create bots.

26

65.     On information and belief, Defendants regularly accessed the Twitch Services with

27

knowledge of the Terms and the prohibitions contained therein.

28

-14-

66. The Terms are valid, enforceable contracts between Twitch and each of the Defendants.

67. Defendants have willfully, continuously, and materially breached the Terms in at least the following ways:

a. posting racist, homophobic, and highly offensive content in Twitch chats in violation of Section 9(i) of the Terms;

b. harassing and defaming users of the Twitch Services in violation of Section 9(v) of the Terms;

c. accessing the Twitch Services with fake accounts after they were banned in violation of Sections 2 and 9(xv) of the Terms;

d. manipulating their identifying information (including names and IP addresses) to "disguise the origin of any User Content transmitted through the Twitch Services" in violation of Section 9(xii);

e. impairing, interfering with, disrupting, negatively affecting, and/or inhibiting other users' enjoyment of the Twitch Services by posting obscene, violent, and harassing content in violation of Section 9(ix) of the Terms; and/or

f. and accessing the Twitch Services with prohibited bots in violation of Section 9(xi) of the Terms.

68. Defendants have willfully, continuously, and materially breached the Guidelines, and therefore the Terms by, among other things, engaging in hateful conduct and harassment on Twitch, which the Guidelines expressly prohibit.

69. Defendants have willfully, continuously and materially breached the Guidelines, and therefore the Terms by, among other things, engaging in "hostile raids" as a form of harassment, which the Guidelines expressly prohibit.

-15-

70.    On information and belief, Defendants have willfully, continuously and materially breached the Developer Terms by "design[ing] bots that engage in offensive or deceptive practices (e.g., generate hate speech, send spam, offer false follows, etc.)."

71.    Twitch has dutifully performed its obligations pursuant to the Terms and the Developer Terms.

72.    As a direct and proximate result of Defendants' material breaches of the Terms and Developer Terms, Twitch has been and will continue to be harmed, thereby entitling it to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendants.  Twitch is entitled to special damages in the amount of lost profits and other reasonably foreseeable harms proximately caused by Defendants' breach.

## SECOND CLAIM FOR RELIEF
### Fraud in the Inducement
### (California Common Law)

73.    Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

74.    Beginning in or about August 2021, Defendants began registering Twitch accounts to conduct hate raids and otherwise harass Twitch streamers.

75.    In registering their Twitch accounts, Defendants agreed to be bound by the Terms. In particular, they represented and agreed not to conduct "hostile raids"; post hateful and harassing content on Twitch; harass or defame other Twitch users; or deploy bots in a manner not permitted by the Terms.  Twitch's reliance was reasonable and was otherwise justified.

76.    Defendants had no intention of abiding by the Terms and made fraudulent representations to the contrary to Twitch, knowing them to be false and with the intent of defrauding Twitch.

-16-

153823186.1

77.     Contrary to their express representations to Twitch, Defendants created Twitch accounts for the purpose of posting harassing content on Twitch, performing hate raids, and harassing other Twitch users.

78.     Based upon Defendants' intentional misrepresentations, Twitch was induced to allow them to register accounts using Twitch's Services.  Had Twitch known of Defendants' true intentions, Twitch would not have allowed them to register accounts and access the Twitch Services.  Once Twitch became aware of Defendants' harassing and hateful actions, Twitch immediately shut down the accounts Defendants used to conduct the hate-raids.

79.     Knowing that Twitch had barred them from further accessing the Twitch Services, unbeknownst to Twitch, Defendants created additional Twitch accounts and again falsely agreed to abide by the Terms.  Defendants immediately violated this promise by continuing to conduct hate raids, harass and defame other Twitch users, and post harassing content on Twitch.

80.     On information and belief, Defendants again misrepresented and concealed their identities and other personally identifying information (such as IP addresses) to create accounts on Twitch from which to conduct hate raids.

81.     Twitch justifiably relied on Defendants' misrepresentations and granted Defendants' access to the Twitch Services.

82.     As a result of Twitch's reliance on Defendants' misrepresentations, Twitch has suffered damage to its goodwill and lost resources, such as money, technical capacity, and personnel, which Twitch would not have been forced to expend but for Defendants' misrepresentations.

83.     Twitch is entitled to all remedies available at law or equity, including injunctive relief, compensatory damages, punitive damages, and/or other equitable or monetary remedies.

### THIRD CLAIM FOR RELIEF
#### Statutory Unfair Competition

-17-

**(Cal. Bus. & Prof. Code § 17200)**

84.     Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

85.     Defendants have engaged in unlawful, unfair or fraudulent business practices or acts as described above including but not limited to fraudulent inducement, harassing Twitch streamers, deploying hostile raids on Twitch, and disrupting Twitch's services.

86.     Defendants' business practices or acts have injured and will continue to injure Twitch in its business and property, in violation of California Business and Professions Code § 17200.

87.     As a result of Defendants' wrongful conduct, Twitch has suffered and will continue to suffer damages if Defendants are not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Twitch prays for the following relief:

1.     That Defendants and their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert or participation with Defendants be preliminarily and permanently enjoined from:

      a.   Using or accessing the Twitch Services;

      b.   Posting content on the Twitch Services, including in the Twitch chat function, that is prohibited by the Terms, including racist, homophobic, xenophobic, or any other harassing content.

      c.   Assisting any individual or company in engaging in the conduct described in 1(a)-(b) above.

-18-

153823186.1

2.      An award to Twitch of restitution and damages, including, but not limited to,

enhanced, liquidated, compensatory, special, and punitive damages, and all other damages

permitted by law.

3.      An award to Twitch of its costs incurred in this suit, including, but not limited to,

reasonable attorneys' fees.

4.      Such other relief as this Court deems just and proper.

<div align="center">

**DEMAND FOR A JURY TRIAL**

</div>

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  September 9, 2021                    **PERKINS COIE LLP**

By:  */s/ Katherine M. Dugdale*
        Katherine M. Dugdale, Bar No. 168014
        KDugdale@perkinscoie.com
        Lauren E. Staniar (*pro hac vice*
        forthcoming)
        LStaniar@perkinscoie.com
        Jacob Dini (*pro hac vice* forthcoming)
        JDini@perkinscoie.com

        Attorneys for Plaintiff
        Twitch Interactive, Inc.

<div align="center">

-19-

</div>

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Twitch Interactive, Inc.

**(b)** County of Residence of First Listed Plaintiff    San Francisco, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

Delaware (state of incorporation); San Francisco County, CA (principal place of business)

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Katherine M. Dugdale, Lauren Watts Staniar, Jacob Dini; Perkins Coie LLP; 1888 Century Park E., Suite 1700, Los Angeles, CA 90067-1721; 310.788.9900

## DEFENDANTS

CruzzControl; CreatineOverdose

County of Residence of First Listed Defendant    Baarto, Netherlands
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | | |
|---|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 | U.S. Government Defendant | ☒ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC § 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 710 Fair Labor Standards Act | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 720 Labor/Management Relations | ☐ 830 Patent | ☐ 430 Banks and Banking |
| | ☐ 340 Marine | | ☐ 740 Railway Labor Act | ☐ 835 Patent—Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 751 Family and Medical Leave Act | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury -Medical Malpractice | ☐ 385 Property Damage Product Liability | | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | | | **IMMIGRATION** | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 462 Naturalization Application | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 440 Other Civil Rights | **HABEAS CORPUS** | ☐ 465 Other Immigration Actions | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 445 Amer. w/Disabilities– Employment | ☐ 535 Death Penalty | | ☐ 871 IRS–Third Party 26 USC § 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 446 Amer. w/Disabilities–Other | **OTHER** | | | |
| ☐ 245 Tort Product Liability | ☐ 448 Education | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)

Brief description of cause:
Breach of contract, fraud in the inducement, and California statutory unfair competition for unlawfully using Twitch services to harass users and promote hate speech

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $ 100,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE _____    DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

**(Place an "X" in One Box Only)** ☒ SAN FRANCISCO/OAKLAND ☐ SAN JOSE ☐ EUREKA-MCKINLEYVILLE

DATE  09/09/2021    SIGNATURE OF ATTORNEY OF RECORD    /s/Katherine M. Dugdale

Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Lauren Watts Staniar, *pro hac vice* forthcoming
LStaniar@perkinscoie.com
Jacob P. Dini, *pro hac vice* forthcoming
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CRUZZCONTROL, an individual; CREATINEOVERDOSE, an individual,<br><br>Defendants. | Case No. 3:21-cv-07006<br><br>**PLAINTIFF TWITCH INTERACTIVE, INC.'S CERTIFICATE OF INTERESTED ENTITIES**<br><br>**[Civil L.R. 3-15]** |

-1-

153763988.1

TO THE COURT AND ALL PARTIES APPEARING OF RECORD:

Pursuant to Civil Local Rule 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- Amazon.com, Inc.: Financial interest in Plaintiff Twitch Interactive, Inc.

DATED:  September 9, 2021

**PERKINS COIE LLP**

By: */s/ Katherine M. Dugdale*
Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
Lauren Watts Staniar (*pro hac vice* forthcoming)
LStaniar@perkinscoie.com
Jacob P. Dini (*pro hac vice* forthcoming)
JDini@perkinscoie.com

Attorneys for Plaintiff
Twitch Interactive, Inc.

CERTIFICATE OF INTERESTED ENTITIES

153763988.1

Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Lauren Watts Staniar, *pro hac vice* forthcoming
LStaniar@perkinscoie.com
Jacob P. Dini, *pro hac vice* forthcoming
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CRUZZCONTROL, an individual; CREATINEOVERDOSE, an individual,<br><br>Defendants. | Case No. 3:21-cv-07006<br><br>**PLAINTIFF TWITCH INTERACTIVE, INC.'S CORPORATE DISCLOSURE STATEMENT**<br><br>**[Fed. R. Civ. P. 7.1]** |

-1-

153764083.1

Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff Twitch Interactive, Inc. states that it is wholly owned by Amazon.com, Inc., a publicly traded company.

DATED: September 9, 2021

**PERKINS COIE LLP**

By: */s/ Katherine M. Dugdale*
    Katherine M. Dugdale, Bar No. 168014
    KDugdale@perkinscoie.com
    Lauren Watts Staniar (*pro hac vice* forthcoming)
    LStaniar@perkinscoie.com
    Jacob P. Dini (*pro hac vice* forthcoming)
    JDini@perkinscoie.com

Attorneys for Plaintiff
Twitch Interactive, Inc.

-2-

CORPORATE DISCLOSURE STATEMENT

153764083.1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,

          Plaintiff,

   v.

CRUZZCONTROL, et al.,

          Defendants.

Case No.  21-cv-07006-SK

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

     IT IS HEREBY ORDERED that this action is assigned to the Honorable Sallie Kim . When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order, the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2.  Plaintiffs or removing parties must file a consent or declination to proceed before a magistrate judge within 14 days of the filing of the complaint or the removal.  All other parties must file a consent or declination within 14 days of appearing in the case.  All parties who have made an appearance must file a consent or declination within 7 days of the filing of a dispositive motion or the case will be reassigned to a district court judge.  Counsel must comply with the case schedule listed below unless the Court otherwise orders.

     IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3.  Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at http://www.cand.uscourts.gov/adr.  A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

     IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties

United States District Court
Northern District of California

United States District Court
Northern District of California

the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California", additional copies of which can be downloaded from the court's Internet website: http://www.cand.uscourts.gov.

| CASE SCHEDULE – ADR MULTI-OPTION PROGRAM | | |
|---|---|---|
| **Date** | **Event** | **Governing Rule** |
| 9/9/2021 | Complaint Filed | |
| 11/22/2021 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at http://www.cand.uscourts.gov) | Civil L.R . 16-8(b) & ADR L.R. 3-5(b) |
| 12/6/2021 | **Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per Standing Order re Contents of Joint Case Management Statement<br><br>(also available at http://www.cand.uscourts.gov) | FRCivP 26(a) (1) Civil L.R . 16-9 |
| 12/13/2021 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) at 1:30 PM in:<br><br>Courtroom C, 15th Floor<br>Phillip Burton Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 | Civil L.R . 16-10 |

**\*** If the Initial Case Management Conference is continued, unless otherwise ordered this deadline is continued to 21 days in advance of the Initial Case Management Conference.

** If the Initial Case Management Conference is continued, unless otherwise ordered this deadline is continued to 7 days in advance of the Initial Case Management Conference.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation, | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) Civil Action No.  3:21-cv-07006 |
| CRUZZCONTROL, an individual; CREATINEOVERDOSE, an individual, | ) ) ) |
| *Defendant(s)* | ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  CRUZZCONTROL, an individual;
CREATINEOVERDOSE, an individual,

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation, | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) ) |
| CRUZZCONTROL, an individual; CREATINEOVERDOSE, an individual, | ) ) ) ) |
| *Defendant(s)* | ) |

Civil Action No.   3:21-cv-07006

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  CRUZZCONTROL, an individual;
CREATINEOVERDOSE, an individual,

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
*Susan Y. Soong*

Date:      9/10/21

*Felicia Brown*

Felicia Brown

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. C

CONSENT OR DECLINATION
TO MAGISTRATE JUDGE
JURISDICTION

Plaintiff(s)

v.

Defendant(s).

**INSTRUCTIONS:** Please indicate below by checking **one** of the two boxes whether you (if you are the party) or the party you represent (if you are an attorney in the case) choose(s) to consent or decline magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐ **Consent to Magistrate Judge Jurisdiction**

      In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

    **OR**

☐ **Decline Magistrate Judge Jurisdiction**

      In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States magistrate judge conduct all further proceedings in this case and I hereby request that this case be reassigned to a United States district judge.

DATE: _____       NAME: _____

                                        COUNSEL FOR
                                        (OR "PRO SE"): _____

_____
*Signature*

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,

        Plaintiff,

    v.

CRUZZCONTROL, et al.,

        Defendants.

Case No.  21-cv-07006-SK

**ORDER REASSIGNING CASE**

    IT IS ORDERED that this case has been reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to the Honorable Jon S. Tigar in the Oakland division for all further proceedings.  Counsel are instructed that all future filings shall bear the initials JST immediately after the case number.

    All hearing and trial dates presently scheduled are vacated.  However, existing briefing schedules for motions remain unchanged.  Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule.  Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.

Dated:  September 27, 2021

*Susan Y. Soong*

_____

Susan Y. Soong
Clerk, United States District Court

A true and correct copy of this order has been served by mail upon any pro se parties.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


**NOTICE OF ELIGIBILITY FOR VIDEO RECORDING**


This case is assigned to a judge who participates in the Cameras in the Courtroom Pilot Project. See General Order 65 and cand.uscourts.gov/cameras. The parties' consent is required before any proceedings in this case may be recorded. If a party, the presiding judge, or a member of the media requests that a proceeding be recorded, consent of the parties will be presumed unless a party submits an Objection to Request for Video Recording form as directed by the Cameras in the Courtroom Procedures.


Parties objecting to video recording are asked, for research purposes, to communicate to the Court the reasons for declining to participate. If you decline to participate, you should candidly convey the reasons for your decision. Whether you agree to participate or decline to participate will have no effect on your case whatsoever.


Susan Y. Soong, Clerk of Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,

Plaintiff,

v.

CRUZZCONTROL, et al.,

Defendants.

Case No.21-cv-07006-JST

**CLERK'S NOTICE SETTING CASE MANAGEMENT CONFERENCE**

Re: Dkt. No. 10

**YOU ARE NOTIFIED THAT** a Case Management Conference is set for January 4, 2022 at 2:00 P.M. before the Honorable JON S. TIGAR. The Joint Case Management Conference Statement is due December 28, 2021 by 2:00 P.M.

Dated: September 27, 2021

Susan Y. Soong
Clerk, United States District Court

By: _____
Mauriona Lee, Deputy Clerk to the
Honorable JON S. TIGAR
510-637-3530

Reset Form

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,                    )
                                             )  Case No: 3:21-cv-07006
                      Plaintiff(s),          )
                                             )  **APPLICATION FOR**
          v.                                 )  **ADMISSION OF ATTORNEY**
                                             )  **PRO HAC VICE**
CRUZZCONTROL, et al.,                        )  (CIVIL LOCAL RULE 11-3)
                                             )
                      Defendant(s).          )
                                             )

I, Lauren Watts Staniar , an active member in good standing of the bar of
Washington State Supreme Court , hereby respectfully apply for admission to practice ***pro hac vice*** in the
Northern District of California representing: Twitch Interactive, Inc. in the
above-entitled action. My local co-counsel in this case is Katherine M. Dugdale , an
attorney who is a member of the bar of this Court in good standing and who maintains an office
within the State of California.

| MY ADDRESS OF RECORD: | LOCAL CO-COUNSEL'S ADDRESS OF RECORD: |
|---|---|
| 1201 Third Avenue, Suite 4900 Seattle, WA 98101 | 1888 Century Park East, Suite 1700, Los Angeles, CA 90067-1721 |
| MY TELEPHONE # OF RECORD: (206) 359-8000 | LOCAL CO-COUNSEL'S TELEPHONE # OF RECORD: (310) 788-3200 |
| MY EMAIL ADDRESS OF RECORD: lstaniar@perkinscoie.com | LOCAL CO-COUNSEL'S EMAIL ADDRESS OF RECORD: kdugdale@perkinscoie.com |

I am an active member in good standing of a United States Court or of the highest court of
another State or the District of Columbia, as indicated above; my bar number is: 48741 .

A true and correct copy of a certificate of good standing or equivalent official document from said
bar is attached to this application.

I agree to familiarize myself with, and abide by, the Local Rules of this Court, especially the
Standards of Professional Conduct for attorneys and the Alternative Dispute Resolution Local Rules.

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated: 10/01/21                         Lauren Watts Staniar
                                        APPLICANT

## ORDER GRANTING APPLICATION
## FOR ADMISSION OF ATTORNEY PRO HAC VICE

IT IS HEREBY ORDERED THAT the application of Lauren Watts Staniar is granted,
subject to the terms and conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate
appearance ***pro hac vice***. Service of papers upon, and communication with, local co-counsel
designated in the application will constitute notice to the party.

Dated:

                                        UNITED STATES DISTRICT/MAGISTRATE JUDGE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ADMISSION | ) | BAR NO. 48741 |
| OF | ) | **CERTIFICATE** |
| LAUREN ELIZABETH WATTS STANIAR | ) | **OF** |
| TO PRACTICE IN THE COURTS OF THIS STATE | ) | **GOOD STANDING** |
|  | ) | |

_____

I, Sarah R. Pendleton, Deputy Clerk of the Supreme Court of the State of Washington, hereby certify

### LAUREN ELIZABETH WATTS STANIAR

was regularly admitted to practice as an Attorney and Counselor at Law in the Supreme Court and all the Courts of the State of Washington on February 5, 2015, and is now and has continuously since that date been an attorney in good standing, and has a current status of active.



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of this Court on the 22nd day of July, 2021.

Sarah R. Pendleton
Supreme Court Deputy Clerk
Washington State Supreme Court

Reset Form

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,    )
           )   Case No: _3:21-cv-07006_
     Plaintiff(s),    )
           )   **APPLICATION FOR**
    v.        )   **ADMISSION OF ATTORNEY**
           )   **PRO HAC VICE**
CRUZZCONTROL, et al.,    )   (CIVIL LOCAL RULE 11-3)
           )
     Defendant(s).   )
           )

  I, _Lauren Watts Staniar_____, an active member in good standing of the bar of _Washington State Supreme Court_, hereby respectfully apply for admission to practice ***pro hac vice*** in the Northern District of California representing: _Twitch Interactive, Inc._____ in the above-entitled action. My local co-counsel in this case is _Katherine M. Dugdale_____, an attorney who is a member of the bar of this Court in good standing and who maintains an office within the State of California.

| MY ADDRESS OF RECORD: | LOCAL CO-COUNSEL'S ADDRESS OF RECORD: |
|---|---|
| 1201 Third Avenue, Suite 4900 Seattle, WA 98101 | 1888 Century Park East, Suite 1700, Los Angeles, CA 90067-1721 |
| MY TELEPHONE # OF RECORD: (206) 359-8000 | LOCAL CO-COUNSEL'S TELEPHONE # OF RECORD: (310) 788-3200 |
| MY EMAIL ADDRESS OF RECORD: lstaniar@perkinscoie.com | LOCAL CO-COUNSEL'S EMAIL ADDRESS OF RECORD: kdugdale@perkinscoie.com |

  I am an active member in good standing of a United States Court or of the highest court of another State or the District of Columbia, as indicated above; my bar number is: _48741_____.

  A true and correct copy of a certificate of good standing or equivalent official document from said bar is attached to this application.

  I agree to familiarize myself with, and abide by, the Local Rules of this Court, especially the Standards of Professional Conduct for attorneys and the Alternative Dispute Resolution Local Rules.

  *I declare under penalty of perjury that the foregoing is true and correct.*

Dated:   10/01/21          _Lauren Watts Staniar_____
                  APPLICANT

# ORDER GRANTING APPLICATION
# FOR ADMISSION OF ATTORNEY PRO HAC VICE

  IT IS HEREBY ORDERED THAT the application of _Lauren Watts Staniar_____ is granted, subject to the terms and conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate appearance ***pro hac vice***. Service of papers upon, and communication with, local co-counsel designated in the application will constitute notice to the party.

Dated: October 4, 2021               

             UNITED STATES DISTRICT/MAGISTRATE JUDGE

Reset Form

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,  )
                           )  Case No: _3:21-cv-07006_
            Plaintiff(s),  )
                           )  **APPLICATION FOR**
    v.                     )  **ADMISSION OF ATTORNEY**
                           )  **PRO HAC VICE**
CRUZZCONTROL, et al.,      )  (CIVIL LOCAL RULE 11-3)
                           )
            Defendant(s).  )
_____)

I, Jacob P. Dini _____, an active member in good standing of the bar of Washington State Supreme Court, hereby respectfully apply for admission to practice ***pro hac vice*** in the Northern District of California representing: Twitch Interactive, Inc. _____ in the above-entitled action. My local co-counsel in this case is Katherine M. Dugdale _____, an attorney who is a member of the bar of this Court in good standing and who maintains an office within the State of California.

| MY ADDRESS OF RECORD: | LOCAL CO-COUNSEL'S ADDRESS OF RECORD: |
|---|---|
| 1201 Third Avenue, Suite 4900 Seattle, WA 98101 | 1888 Century Park East, Suite 1700, Los Angeles, CA 90067-1721 |
| MY TELEPHONE # OF RECORD: (206) 359-8000 | LOCAL CO-COUNSEL'S TELEPHONE # OF RECORD: (310) 788-3200 |
| MY EMAIL ADDRESS OF RECORD: jdini@perkinscoie.com | LOCAL CO-COUNSEL'S EMAIL ADDRESS OF RECORD: kdugdale@perkinscoie.com |

I am an active member in good standing of a United States Court or of the highest court of another State or the District of Columbia, as indicated above; my bar number is: 54115 _____.

A true and correct copy of a certificate of good standing or equivalent official document from said bar is attached to this application.

I agree to familiarize myself with, and abide by, the Local Rules of this Court, especially the Standards of Professional Conduct for attorneys and the Alternative Dispute Resolution Local Rules.

***I declare under penalty of perjury that the foregoing is true and correct.***

Dated: 10-04-2021

                                    Jacob P. Dini
                                    APPLICANT

## ORDER GRANTING APPLICATION
## FOR ADMISSION OF ATTORNEY PRO HAC VICE

IT IS HEREBY ORDERED THAT the application of Jacob P. Dini _____ is granted, subject to the terms and conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate appearance ***pro hac vice***. Service of papers upon, and communication with, local co-counsel designated in the application will constitute notice to the party.

Dated:

                                    _____
                                    UNITED STATES DISTRICT/MAGISTRATE JUDGE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE ADMISSION | ) | BAR NO. 54115 |
| OF | ) | **CERTIFICATE** |
| JACOB PAUL DINI | ) | **OF** |
| TO PRACTICE IN THE COURTS OF THIS STATE | ) | **GOOD STANDING** |

I, Susan L. Carlson, Clerk of the Supreme Court of the State of Washington, hereby certify

**JACOB PAUL DINI**

was regularly admitted to practice as an Attorney and Counselor at Law in the Supreme Court and

all the Courts of the State of Washington on October 15, 2018, and is now and has continuously

since that date been an attorney in good standing, and has a current status of active.



IN TESTIMONY WHEREOF, I have
hereunto set my hand and affixed
the seal of this Court this 19th day of
May, 2021.

Susan L. Carlson
Supreme Court Clerk
Washington State Supreme Court

Reset Form

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

TWITCH INTERACTIVE, INC.,                )
                                         ) Case No: 3:21-cv-07006
                    Plaintiff(s),        )
                                         ) **APPLICATION FOR**
          v.                             ) **ADMISSION OF ATTORNEY**
                                         ) **PRO HAC VICE**
CRUZZCONTROL, et al.,                    ) (CIVIL LOCAL RULE 11-3)
                                         )
                    Defendant(s).        )

I, Jacob P. Dini _____, an active member in good standing of the bar of Washington State Supreme Court, hereby respectfully apply for admission to practice *pro hac vice* in the Northern District of California representing: Twitch Interactive, Inc. _____ in the above-entitled action. My local co-counsel in this case is Katherine M. Dugdale _____, an attorney who is a member of the bar of this Court in good standing and who maintains an office within the State of California.

| MY ADDRESS OF RECORD: | LOCAL CO-COUNSEL'S ADDRESS OF RECORD: |
|---|---|
| 1201 Third Avenue, Suite 4900 Seattle, WA 98101 | 1888 Century Park East, Suite 1700, Los Angeles, CA 90067-1721 |
| MY TELEPHONE # OF RECORD: (206) 359-8000 | LOCAL CO-COUNSEL'S TELEPHONE # OF RECORD: (310) 788-3200 |
| MY EMAIL ADDRESS OF RECORD: jdini@perkinscoie.com | LOCAL CO-COUNSEL'S EMAIL ADDRESS OF RECORD: kdugdale@perkinscoie.com |

I am an active member in good standing of a United States Court or of the highest court of another State or the District of Columbia, as indicated above; my bar number is: 54115 _____.

A true and correct copy of a certificate of good standing or equivalent official document from said bar is attached to this application.

I agree to familiarize myself with, and abide by, the Local Rules of this Court, especially the Standards of Professional Conduct for attorneys and the Alternative Dispute Resolution Local Rules.

*I declare under penalty of perjury that the foregoing is true and correct.*

Dated: 10-04-2021

_____ Jacob P. Dini _____
APPLICANT

## ORDER GRANTING APPLICATION
## FOR ADMISSION OF ATTORNEY PRO HAC VICE

IT IS HEREBY ORDERED THAT the application of Jacob P. Dini _____ is granted, subject to the terms and conditions of Civil L.R. 11-3. All papers filed by the attorney must indicate appearance *pro hac vice*. Service of papers upon, and communication with, local co-counsel designated in the application will constitute notice to the party.

Dated: October 8, 2021

_____
UNITED STATES DISTRICT/ MAGISTRATE JUDGE

*PRO HAC VICE* APPLICATION & ORDER                                    *October 2012*

Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Lauren Watts Staniar, *pro hac vice*
LStaniar@perkinscoie.com
Jacob Dini, *pro hac vice*
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS VOSTERMANS, an individual, also known as CRUZZCONTROL; and CREATINEOVERDOSE, an individual,<br><br>Defendants. | Case No. 4:21-cv-7006-JST<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>(1) BREACH OF CONTRACT<br>(2) FRAUD IN THE INDUCEMENT<br><br><u>DEMAND FOR JURY TRIAL</u> |

## I.    INTRODUCTION

1.      Twitch Interactive, Inc. ("Twitch") is one of the world's leading services for content creators to stream content as part of a social, interactive community.  Each month, millions of people come together to create their own entertainment: live, never-to-be repeated experiences created by the magical interactions of the many.  In 2020, users watched over 1

-1-

trillion minutes of content, and Twitch.tv had 30 million average daily visitors. Twitch's success is due in part to the measures it has taken to create a safe and accessible community for its millions of users.

2. The safety of Twitch's community is its top priority. For this reason, Twitch forbids harassment and threats on the Twitch Services. Its Terms of Service prohibit users from creating, uploading, transmitting, or streaming any content that is unlawful, defamatory, obscene, pornographic, harassing, threatening, abusive, or otherwise objectionable. As expressed in its Community Guidelines ("Guidelines"), Twitch does not tolerate hateful conduct and harassment. Twitch specifically bans "discrimination, denigration, harassment, or violence based on the following protected characteristics: *race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender identity, sexual orientation, disability, serious medical condition, and veteran status*." Twitch has "zero tolerance for hateful conduct . . . ."

3. Beginning in or about August 2021, Defendants Chris Vostermans (aka "CruzzControl") and CreatineOverdose (collectively "Defendants") began flooding Twitch streamers with hateful content. This type of targeted attack is known colloquially as a "hate raid." These hate raids often target streamers from marginalized groups. Defendants attack these streamers by flooding their chats with bot-powered Twitch accounts that spew racist, sexist, and homophobic language and content.

4. Twitch took swift action against Defendants by suspending and eventually permanently banning Defendants' known Twitch accounts. Defendants were undeterred. They evaded Twitch's bans by creating new, alternate Twitch accounts, and continually altering their self-described "hate raid code" to avoid detection and suspension by Twitch.

5. Defendants' actions seriously harmed and will continue to harm the Twitch community. Streamers who were the victims of hate-raids experienced mental health issues, and

some have reported cutting back on streaming to avoid persistent harassment.[1]  Members of the community have called on Twitch to prevent the raids.

6.     Twitch expended significant resources investigating and banning Defendants, as well as implementing updated security measures intended to halt and prevent Defendants' unlawful actions.

7.     Despite these efforts, Defendants' actions are ongoing—they continue to promote and engage in hate raids.  If they are not stopped, Defendants will continue to harass and disrupt the Twitch community with hate raids.

8.     Twitch brings this action to end Defendants' unlawful, fraudulent and highly offensive activities, enforce its contracts with Defendants, and hold Defendants accountable.

## II.     JURISDICTION

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Twitch and Defendants and the amount in controversy exceeds $75,000.

10.    Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.  Defendants have repeatedly, knowingly, and intentionally accessed Twitch servers located in this district to undertake their unlawful activities.  While accessing Twitch servers, Defendants engaged in systematic and continuous contacts with this district and targeted their wrongful acts at Twitch, which is headquartered in this district.

---

[1] https://www.washingtonpost.com/video-games/2021/08/25/twitch-hate-raids-streamers-discord-cybersecurity/.

-3-

### III.    INTRADISTRICT ASSIGNMENT

11.    Assignment to the San Francisco Division or Oakland Division is proper under Local Civil Rule 3-2(d) because Twitch is located in San Francisco County, and the events described herein giving rise to this lawsuit took place primarily in San Francisco County.

### IV.    THE PARTIES

12.    Twitch is a Delaware corporation with its principal place of business in San Francisco.  Twitch operates the "Twitch Services," which are the website available at http://www.twitch.tv, and its network of websites, software applications, and any other products or services offered by Twitch.

13.    On information and belief, defendant Chris Vostermans, a Twitch user also known as CruzzControl, is an individual residing in Baarto, Netherlands.  Mr. Vostermans is responsible in whole or in part for the wrongful conduct alleged herein.  Mr. Vostermans operated and continues to operate accounts on the Twitch Services under aliases, including but not limited to CruzzControl, Zenobias_goat, bamiblok, lexfannr1, and nirger.  Mr. Vostermans' acts described in this Amended Complaint were intentionally directed toward Twitch within this judicial district, subjecting him to personal jurisdiction.

14.    On information and belief, the Twitch user CreatineOverdose is an individual residing in Vienna, Austria.  CreatineOverdose is responsible in whole or in part for the wrongful conduct alleged herein.  CreatineOverdose operated and continues to operate accounts on the Twitch Services under various aliases, including but not limited to CreatineOverdose, CreatineBanEvades, CreatineReturns, and CreatineReported.  CreatineOverdose's acts described in this Amended Complaint were intentionally directed toward Twitch within this judicial district, subjecting him to personal jurisdiction.  Twitch will amend this Complaint if and when it uncovers CreatineOverdose's legal name.

-4-

15.     Upon information and belief, each of the defendants was, at all times mentioned in this Amended Complaint, acting as the agent, employee, or alter ego of every other defendant, and in doing the things mentioned herein, was acting within the course and scope of such agency, employment, or other relationship and with full knowledge and consent of each of the other defendants.

## V.     FACTS

### A.     Twitch

16.     Twitch is a real-time streaming video service where community members gather to watch, play, and chat about shared interests—predominantly video games, sports, and creative arts.  Twitch was founded in 2011 and has been an Amazon subsidiary since 2014.

17.     On Twitch, streamers (those Twitch users who share live content on the service) pursue their interests to engage and entertain their viewers.  More than 7,000,000 unique streamers per month stream via Twitch's service.

18.     Streamers work extensively to create and foster authentic, passionate, and loyal communities on Twitch.  They do this in part by building an identity on Twitch outside of their work as a content creator.

19.     Twitch values the diversity of its community.  Twitch hosts millions of diverse individuals and has created programs to support creators of color and other individuals from marginalized groups.  For example, in May 2021 Twitch celebrated Asian & Pacific Islander Month to celebrate Asian & Pacific Islander creators from around the globe, spotlighting over 40 featured Asian & Pacific Islander creators and communities on Twitch and beyond.

20.     Twitch viewers and streamers use a chat function to communicate on Twitch.  Twitch chat is one of the Twitch Service's most popular features, and it is often integral in building a community around a Twitch channel or streamer.

-5-

21.     A streamer's "Stream Chat" panel is open any time that person is streaming on Twitch.  Community members post comments in the panel to encourage the streamer, provide support, and send Twitch-specific emojis.  Streamers can respond to messages in the chat.

22.     Streamers can set rules for their chats, and streamers frequently admonish participants not to use racist or offensive language.

23.     Users who only watch streams may, but are not required to, create an account on Twitch.  Streamers, however, must create an account.  And users who participate in Twitch's chat function are also required to create an account.

24.     Twitch provides streamers and developers with a variety of tools to bring streamers, viewers, and developers together on the Twitch service in new, engaging ways.  One such tool is the "Chatbot," in which developers can create programs that allow streamers to interact programmatically with their Twitch chat feed using preset standards.  For example, when a viewer types !dice into a streamers' chat, a simple chatbot created by a developer and used by the streamer may automatically respond by generating a number between 1-6.  Streamers can use chatbots for a variety of basic moderation tasks, including for example, automatically deleting messages in chats that contain links, solicit song requests from viewers, and organize in-chat games.

25.     But bots can also be used for nefarious, unauthorized purposes, despite Twitch's restrictions on such uses.  For example, a developer may create bot software designed to automatically spam a streamer's channel with thousands of messages in a short period of time, drowning out authentic conversation on the streamer's channel, or worse, promoting hateful or offensive content.

26.     Twitch forbids developers from "design[ing] bots that engage in offensive or deceptive practices (e.g., generate hate speech [or] send spam . . . .)."  And Twitch takes this

-6-

prohibition seriously, employing sophisticated methods to identify and stop unauthorized bot

activity.

**B.     Twitch's Terms of Service and Community Guidelines**

27.     In order to create an account or otherwise use or access the Twitch Services or

utilize the Twitch chat, a prospective user must agree to be bound by, among other things,

Twitch's Terms of Service, Community Guidelines, and Twitch Developer Services Agreement

(collectively, the "Terms").  Specifically, the Terms state: "The Terms of Service apply whether

you are a user that registers an account with the Twitch Services or an unregistered user.  You

agree that by clicking 'Sign Up' or otherwise registering, downloading, accessing or using the

Twitch Services, you are entering into a legally binding agreement between you and Twitch

regarding your use of the Twitch Services.  You acknowledge that you have read, understood, and

agree to be bound by these Terms of Service."

28.     Twitch issues its users a limited, non-sublicensable license to access or use the

Twitch Services for personal or internal business use only, provided that the user agrees to the

Terms.  "Any use of the Twitch Services or the Materials except as specifically authorized in

these Terms of Service, without the prior written permission of Twitch, is strictly prohibited and

may violate intellectual property rights or other laws."

29.     The Terms explain that previously banned users may not access the Twitch

Services: "The Twitch Services are also not available to any users previously removed from the

Twitch Services by Twitch or to any persons barred from receiving them under the laws of the

United States (such as its export and re-export restrictions and regulations) or applicable laws in

any other jurisdiction."

-7-

30.     The Terms expressly prohibit anyone who accesses or uses the Twitch Services from harassing others on Twitch or posting racist, homophobic, violent, or otherwise harmful content.  Specifically, the Terms prohibit users from:

a.   creating, uploading, transmitting, or distributing "any content that is inaccurate, unlawful, infringing, defamatory, obscene, pornographic, invasive of privacy or publicity rights, harassing, threatening, abusive, inflammatory, or otherwise objectionable";

b.   "defam[ing], harass[ing], abus[ing], threaten[ing], or defraud[ing] users of the Twitch Services";

c.   interfering with or damaging "operation of the Twitch Services or any user's enjoyment of them, by any means, including uploading or otherwise disseminating viruses, adware, spyware, worms, or other malicious code";

d.   manipulating "identifiers in order to disguise the origin of any User Content transmitted through the Twitch Services";

e.   "attempt[ing] to circumvent any content filtering techniques [Twitch] employ[s], or attempt to access any service or area of the Twitch Services that you are not authorized to access";

f.   using "the Twitch Services for any illegal purpose, or in violation of any local, state, national, or international law or regulation, including, without limitation, laws governing intellectual property and other proprietary rights, data protection and privacy"; or

g.   "design[ing] bots that engage in offensive or deceptive practices (*e.g.*, generate hate speech, send spam, offer false follows, etc.)."

-8-

31.     The Guidelines, as part of the Terms, govern activity on Twitch with the goal of "provid[ing] the best shared social video experience created by our growing community where creators and communities can interact safely."

32.     "To achieve this goal, [Twitch] asks that all users participate in such a way that promotes a friendly, positive experience for" the Twitch global community."

33.     The Guidelines state that Twitch does not tolerate racist, homophobic, xenophobic, or otherwise harassing content such as that at issue here.

34.     The Guidelines provide that "[h]ateful conduct and harassment are not allowed on Twitch.  Hateful content is any content or activity that promotes or encourages discrimination, denigration, harassment, or violence based on the following protected characteristics: *race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender, gender identity, sexual orientation, disability, serious medical condition, and veteran status*."

35.     Under the Guidelines, "Twitch has zero tolerance for hateful conduct, meaning" Twitch acts "on every valid reported instance of hateful conduct."  Twitch "affords every user equal protections under this policy, regardless of their particular characteristics."

36.     The Guidelines state that "hostile raids" are a form of harassment, and expressly bans those raids on Twitch:  "Harassment has many manifestations, including stalking, personal attacks, promotion of physical harm, **hostile raids**, and malicious false report brigading." (emphasis added).

37.     Twitch explains in the Guidelines that it "will take action on all instances of hateful conduct and harassment, with an increasing severity of enforcement when the behavior is targeted, personal, graphic, or repeated/prolonged, incites further abuse, or involves threats of violence or coercion.  The most egregious violations may result in an indefinite suspension on the first offense."

-9-

38.     The Guidelines make clear that Twitch will punish offensive conduct: "To protect the integrity of our community, as the provider of the service, we at Twitch reserve the right to suspend any account at any time for any conduct that we determine to be inappropriate or harmful.  Such actions may include:  removal of content, a strike on the account, and/or suspension of account(s)."

39.     Twitch's efforts do not end with the posting of its Terms.  Twitch employs a Trust and Safety team that operates around the clock and around the globe to investigate and act in connection with violations of the Terms.

40.     Twitch also invests in technologies and processes that address potential risks to user safety, with the aim to create the best possible experience for streamers and their audiences.  For example, Twitch has implemented a banned word list.  And streamers can automatically filter out unwanted messages in their chat using AutoMod, a Twitch proprietary tool.  Twitch also offers tools that streamers can deploy to block or ban users from their audience and report them to Twitch's safety operations team.

41.     Twitch continuously works to improve its ability to detect and act upon violations of the Terms and is continuing to invest in technologies to support this effort.

**C.     Defendants' Unlawful Activity**

42.     Beginning in or about August 2021, Defendants began coordinating attacks on Twitch's streamers by raiding their channels and spamming those communities with hate (referred to hereafter as "hate raids").  These hate raids were, in some cases, directed to streamers who identified themselves as racial minorities and/or members of the LGBTQ+ community.

43.     Defendants conduct the hate-raids by flooding a streamer's chat with hate-filled and obscene text, including racial slurs, personally identifying information, and malicious links (such as links to gore videos intended to shock/offend) over a short period of time.  Defendants

-10-

are able to do this through the use of fraudulently created "bot" accounts, which are created for the sole purposes of launching large scale, automated attacks against Twitch's services and community. Defendants' bots permit them to spew hateful content at a robotic pace, often sending dozens of messages per minute that often outpace the targeted streamer's ability to moderate chat. Defendants claim that they can generate thousands of bots in minutes for this purpose.

44. Defendants have deployed hate raids on Twitch in violation of the Terms. For example, from August 8-10, 2021, Defendant Chris Vostermans, operating on Twitch as CruzzControl, used bots to spam a Twitch channel with racial slurs and descriptions of violent acts against racial minorities and members of the LGBTQIA+ community. These Twitch usernames for these bots incorporated the term "cruzzcontrol" and "Zenobia," both of which are connected to Mr. Vostermans.

45. On information and belief, Mr. Vostermans is responsible for nearly 3,000 bot accounts associated with hate raids. Bots developed and deployed by Mr. Vostermans have been linked to various hate raid events, including those targeting black and LGBTQIA+ streamers with racist, homophobic, sexist and other harassing content.

46. Mr. Vostermans has admitted to using bots to flood Twitch channels with harassing content. He has also demonstrated how the bots work so others can use similar methods to accomplish hate raids.

47. Twitch identified Mr. Vostermans by his public Facebook account, which he linked to his original Twitch CruzzControl account. Twitch identified multiple Twitch accounts associated with Mr. Vostermans' email address and also linked those to the hate raids. Those include, but are not limited to Twitch accounts lexfannr1, nirger, and bamiblok. Twitch banned Mr. Vostermans' accounts that it associated with the hate raids. Undeterred, Mr. Vostermans

-11-

created dozens more Twitch accounts—which Twitch can connect to him by his IP address—for purposes of continuing the hate raids. Those accounts use fake email addresses and highly offensive names. Twitch permanently banned the accounts it identified as participating in the hate raids. In addition to the public Facebook page, Twitch identified additional links between Chris Vostermans and Twitch user CruzzControl, who coordinated the hate raids.

48. Twitch has also linked CreatineOverdose directly to hate raids. For example, on August 15, 2021, Defendant CreatineOverdose used their bot software to demonstrate how it could be used to spam Twitch channels with racial slurs, graphic descriptions of violence against minorities, and claims that the hate raiders are the "K K K." Bots used in this demonstration contain unique usernames that Twitch later detected as being used to spam similar violent hate speech in numerous other Twitch channels.

49. Hate raid victims identified CreatineOverdose and CreatineReturns as Twitch accounts that hate raided their channels.

50. In addition to being highly offensive, the hate raids are also disruptive to the streamers' streams and authentic engagement from the streamers' intended viewers. For example, victims of the hate raids may be forced to limit those who can use the chat feature on their streams to only the streamers' followers/paying subscribers, instead of the entire Twitch community, reducing the opportunity for genuine engagement between streamers and viewers that is essential to the Twitch Services.

51. These attacks obstruct the chat so significantly, victimized streamers are unable to engage with their community through chat for the duration of the attack, and some even choose to avoid streaming altogether until the attack ends. The attacks have pushed some victims to stop streaming on Twitch until the hate raids end, eliminating an important source of revenue for them.

-12-

52.     Twitch took swift action against the accounts and users that conducted the hate raids, immediately and permanently suspending them consistent with the Terms.  As part of this action, Twitch banned Defendants' known accounts.

53.     However, despite Twitch's best efforts, the hate raids continue.  On information and belief, Defendants created software code to conduct hate raids via automated means.  And they continue to develop their software code to avoid Twitch's efforts at preventing Defendants' bots from accessing the Twitch Services.

54.     On information and belief, Defendants work in concert with others in what one Defendant, CreatineOverdose, has described as the "hate raiding community" to perform these hate raids.

55.     On information and belief, Defendants coordinate their activities with the "hate raiding community" through other gaming-related social media platforms, including but not limited to Discord and Steam.

56.     Defendants' actions have harmed and continue to harm Twitch and its community.

57.     Streamers who Defendants targeted with hate raids were traumatized.  Many streamers Tweeted their reactions to Defendants' actions.  The following are a few examples.



King Ace 👑💥🖤 | they/she @A_TypicalQueer · Aug 28
These hate raiders are absolutely gross. They really made a whole Instagram for ya queer AFTER trying to hack into my Twitter and Instagram accounts. Also, peep the names of the accounts that followed me while I was live 😔 let's be clever yall.



Octogeisha
@octogeisha

Heads up friends the following
foregathers, creatineoverdose, creatinereturns
all are known for hate raids  sending hate to disabled,
Lgbtqia+ and being extremely racist! please ban them
and if any of you know any more users please share
them
#TwitchDoBetter #LGBTQIA

FIRST AMENDED COMPLAINT

58.     To further curb Defendants' hate-raids, Twitch updated its software to employ additional measures that better detect malicious bot software in chat messages.

59.     Twitch expended significant resources combatting Defendants' attacks.  Twitch spent time and money investigating Defendants, including through use of its fraud detection team.  Twitch also engineered technological and other fixes in an attempt to stop Defendants' harassing and hateful conduct.  These updates include but are not limited to implementing stricter identity controls with accounts, machine learning algorithms to detect bot accounts that are used to engage in harmful chat and augmenting the banned word list.  Twitch mobilized its communications staff to address the community harm flowing from the hate raids and assured its community that it was taking proactive measures to stop them.  Twitch also worked with impacted streamers to educate them on moderation toolkits for their chats and solicited and responded to streamers' and users' comments and concerns.

### FIRST CLAIM FOR RELIEF
**Breach of Contract**
**(California Common Law)**

60.     Twitch realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

61.     Access to and use of the Twitch Services is governed by and subject to the Terms.

62.     At all relevant times, Twitch prominently displayed and/or provided links to the Terms.  Twitch users are presented with and must affirmatively accept the Terms to register for a Twitch account.  Twitch users are presented with and must affirmatively accept the Terms to use the Twitch chat function.

63.     The Terms provide that they apply "whether you are a user that registers an account with the Twitch Services or an unregistered user.  You agree that by clicking 'Sign Up' or otherwise registering, downloading, accessing, or using the Twitch Services, you are entering

-14-

into a legally binding agreement between you and Twitch regarding your use of the Twitch Services."

64.     The Guidelines are incorporated into the Terms by reference.  A violation of the Guidelines is a violation of the Terms.

65.     The Terms are binding on Defendants.  Each of the Defendants agreed to abide by the Terms by creating a Twitch account, by using Twitch chat and/or any other Twitch Services, and/or by accessing the Twitch Services.

66.     On information and belief, Defendants also agreed to be bound by the Twitch Developer Services Agreement ("Developer Terms") when they accessed and used the Twitch Developer Site and/or Twitch Services to create bots.

67.     On information and belief, Defendants regularly accessed the Twitch Services with knowledge of the Terms and the prohibitions contained therein.

68.     The Terms are valid, enforceable contracts between Twitch and each of the Defendants.

69.     Defendants have willfully, continuously, and materially breached the Terms in at least the following ways:

    a.  posting racist, homophobic, and highly offensive content in Twitch chats in violation of Section 9(i) of the Terms;

    b.  harassing and defaming users of the Twitch Services in violation of Section 9(v) of the Terms;

    c.  accessing the Twitch Services with fake accounts after they were banned in violation of Sections 2 and 9(xv) of the Terms;

d.  manipulating their identifying information (including names, email addresses and IP addresses) to "disguise the origin of any User Content transmitted through the Twitch Services" in violation of Section 9(xii);

e.  impairing, interfering with, disrupting, negatively affecting, and/or inhibiting other users' enjoyment of the Twitch Services by posting obscene, violent, and harassing content in violation of Section 9(ix) of the Terms; and/or

f.  accessing the Twitch Services with prohibited bots in violation of Section 9(xi) of the Terms.

70.  Defendants have willfully, continuously, and materially breached the Guidelines, and therefore the Terms by, among other things, engaging in hateful conduct and harassment on Twitch, which the Guidelines expressly prohibit.

71.  Defendants have willfully, continuously and materially breached the Guidelines, and therefore the Terms by, among other things, engaging in "hostile raids" as a form of harassment, which the Guidelines expressly prohibit.

72.  On information and belief, Defendants have willfully, continuously and materially breached the Developer Terms by "design[ing] bots that engage in offensive or deceptive practices (e.g., generate hate speech, send spam, offer false follows, etc.)."

73.  Twitch has dutifully performed its obligations pursuant to the Terms and the Developer Terms.

74.  As a direct and proximate result of Defendants' material breaches of the Terms and Developer Terms, Twitch has been and will continue to be harmed, thereby entitling it to injunctive relief, compensatory damages, attorneys' fees, costs, and/or other equitable relief against Defendants.  Twitch is entitled to special damages in the amount of lost profits and other reasonably foreseeable harms proximately caused by Defendants' breach.

-16-

1

2

**SECOND CLAIM FOR RELIEF**
**Fraud in the Inducement**
**(California Common Law)**

3

4

75.     Twitch realleges and incorporates by reference the allegations in the preceding

paragraphs as if fully set forth herein.

5

6

7

76.     Beginning in or about August 2021, Defendants began registering Twitch accounts

to conduct hate raids and otherwise harass Twitch streamers.

8

9

10

11

12

77.     In registering their Twitch accounts, Defendants agreed to be bound by the Terms.

In particular, they represented and agreed not to conduct "hostile raids"; post hateful and

harassing content on Twitch; harass or defame other Twitch users; or deploy bots in a manner not

permitted by the Terms.  Twitch's reliance was reasonable and was otherwise justified.

13

14

15

78.     Defendants had no intention of abiding by the Terms and made fraudulent

representations to the contrary to Twitch, knowing them to be false and with the intent of

defrauding Twitch.

16

17

18

79.     Contrary to their express representations to Twitch, Defendants created Twitch

accounts for the purpose of posting harassing content on Twitch, performing hate raids, and

harassing other Twitch users.

19

20

21

22

23

24

80.     Based upon Defendants' intentional misrepresentations, Twitch was induced to

allow them to register accounts using Twitch's Services.  Had Twitch known of Defendants' true

intentions, Twitch would not have allowed them to register accounts and access the Twitch

Services.  Once Twitch became aware of Defendants' harassing and hateful actions, Twitch

immediately shut down the accounts Defendants used to conduct the hate-raids.

25

26

27

81.     Knowing that Twitch had barred them from further accessing the Twitch Services,

unbeknownst to Twitch, Defendants created additional Twitch accounts and again falsely agreed

28

-17-

to abide by the Terms. Defendants immediately violated this promise by continuing to conduct hate raids, harass and defame other Twitch users, and post harassing content on Twitch.

82.     On information and belief, Defendants again misrepresented and concealed their identities and other personally identifying information (such as email addresses and IP addresses) to create accounts on Twitch from which to conduct hate raids.

83.     Twitch justifiably relied on Defendants' misrepresentations and granted Defendants' access to the Twitch Services.

84.     As a result of Twitch's reliance on Defendants' misrepresentations, Twitch has suffered damage to its goodwill and lost resources, such as money, technical capacity, and personnel, which Twitch would not have been forced to expend but for Defendants' misrepresentations.

85.     Twitch is entitled to all remedies available at law or equity, including injunctive relief, compensatory damages, punitive damages, and/or other equitable or monetary remedies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Twitch prays for the following relief:

1.     That Defendants and their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert or participation with Defendants be preliminarily and permanently enjoined from:

    a.  Using or accessing the Twitch Services;

    b.  Posting content on the Twitch Services, including in the Twitch chat function, that is prohibited by the Terms, including racist, homophobic, xenophobic, or any other harassing content.

    c.  Assisting any individual or company in engaging in the conduct described in 1(a)-(b) above.

-18-

2.      An award to Twitch of restitution and damages, including, but not limited to, enhanced, liquidated, compensatory, special, and punitive damages, and all other damages permitted by law.

3.      An award to Twitch of its costs incurred in this suit, including, but not limited to, reasonable attorneys' fees.

4.      Such other relief as this Court deems just and proper.

<div align="center">

**DEMAND FOR A JURY TRIAL**

</div>

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  October 21, 2021              **PERKINS COIE LLP**

By: */s/ Katherine M. Dugdale*
     Katherine M. Dugdale, Bar No. 168014
     KDugdale@perkinscoie.com
     Lauren E. Staniar (*pro hac vice*)
     LStaniar@perkinscoie.com
     Jacob Dini (*pro hac vice*)
     JDini@perkinscoie.com

     Attorneys for Plaintiff
     Twitch Interactive, Inc.

-19-

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

**STANDING ORDER FOR ALL CIVIL CASES BEFORE
DISTRICT JUDGE JON S. TIGAR**

## A.  <u>Conformity with Rules</u>

The parties shall follow the Federal Rules of Civil Procedure, the Civil Local Rules, and the General Orders of the Northern District of California, except as superseded by this Court's standing orders.

## B.  <u>Service of this Order Is Required</u>

Within five days of the filing of the complaint or the addition of a new party, the plaintiff shall serve on all parties a copy of this Order and the Standing Order for All Judges of the Northern District of California: Contents of Joint Case Management Statement.

## C.  <u>Court Schedule</u>

Judge Tigar hears civil motions on Thursdays at 2:00 p.m., in Courtroom 6, 2nd Floor, United States District Court, 1301 Clay Street, Oakland, California.  Motions must be noticed for a hearing in accordance with Civil Local Rule 7-2(a).  Parties must consult Judge Tigar's weekly calendar, available at https://www.cand.uscourts.gov/jst, to determine which dates are available. They need not reserve a hearing date in advance.  The Court may reset noticed hearing dates as its calendar requires.

The Court may find a matter suitable for disposition without oral argument and vacate the hearing on the matter.

Case management conferences are held on Tuesdays at 2:00 p.m.

Trials commence on Mondays at 8:00 a.m. for jury trials and Mondays at 8:30 a.m. for bench trials.  Both jury and bench trials proceed Mondays through Thursdays.  Pretrial conferences are held on Fridays at 2:00 p.m.

Scheduling questions may be addressed to Courtroom Deputy Mauriona Lee at (510) 637-3547 or jstcrd@cand.uscourts.gov.

All filing deadlines are at 5:00 p.m. unless otherwise ordered.

## D.  <u>Invitation to Self-Identify Pronouns and Honorifics</u>

Litigants and lawyers may indicate their pronouns (e.g., she/her, he/him, they/their) and honorifics (e.g., Mr., Ms., Mx., Dr.) by filing a letter, adding the information in the name block or signature line of the pleadings, or verbally informing the Court when making an appearance.

**E.**   **Joint Case Management Statement and Initial Case Management Conference**

Parties are required to file a joint case management statement not less than seven calendar days before a scheduled case management conference, unless the Court sets a different deadline.

Unless otherwise ordered, the parties' statement must comply with the terms of the Standing Order for All Judges of the Northern District of California: Contents of Joint Case Management Statement.  Parties shall not incorporate prior case management statements by reference. Parties must also review in detail the Northern District's electronically stored information ("ESI") guidelines and checklist for Rule 26(f) conferences, which are available at https://cand.uscourts.gov/eDiscoveryGuidelines.  The Court discourages deviation from the ESI guidelines absent good cause.  Failure to meet and confer regarding the required topics prior to the initial case management conference, including alternative dispute resolution and ESI, may, in the reasonable exercise of the Court's discretion, result in sanctions or disciplinary action.

**F.**   **Requests for Telephonic Appearance**

Request to appear by telephone are generally unnecessary because Judge Tigar currently conducts case management conferences and law and motion hearings by video.

When such a request is necessary, parties seeking to appear telephonically must file a stipulation and proposed order, or an administrative motion and proposed order if a stipulation is not possible, at least seven calendar days prior to the scheduled appearance.  Absent extraordinary circumstances and a showing of good cause, late requests will be denied.

If a case management statement is required, parties may not file a request to appear telephonically at a case management conference until after the case management statement has been filed.

If a request to appear telephonically is granted, the Court will provide instructions on how to appear.  Where feasible, parties shall make telephonic appearances using a land line, rather than a mobile phone.

**G.**   **Motions for Summary Judgment**

Absent good cause, the Court will consider only one motion for summary judgment per party. Any party wishing to exceed this limit must request leave of court and must show good cause. Motions for summary judgment shall comply with Civil Local Rule 7 in all respects.

Unless otherwise ordered, the parties must meet and confer to determine if they will file cross-motions for summary judgment.  If so, only four briefs will be allowed: (1) opening brief by the plaintiff side; (2) opening/opposition brief by the defense side; (3) opposition/reply brief by the plaintiff side; and (4) reply brief by the defense side.  The parties may agree to reverse the order, and have the defense file its opening brief first, without order of the Court.  The first two briefs are limited to twenty-five pages; the third brief is limited to twenty pages; and the fourth brief is limited to fifteen pages.  Before the first brief is filed, the parties shall submit a stipulation and proposed order setting a briefing schedule for the cross-motions.  The fourth brief must be filed at least twenty-one days before the hearing date.

**H.**     **Stipulated Protective Orders and Orders Re: Discovery of ESI**

Parties who seek a protective order or order re: discovery of ESI shall, where practicable, use one of the model stipulated orders available at https://cand.uscourts.gov/model-protective-orders or https://cand.uscourts.gov/eDiscoveryGuidelines.  Parties shall file one of the following with any proposed protective order or order re: discovery of ESI: (a) a declaration stating that the proposed order is identical to one of the model orders except for the addition of case-identifying information or the elimination of language denoted as optional; (b) a declaration explaining each modification to the model order, along with a redline version comparing the proposed order with the model order; or (c) a declaration explaining why use of one of the model orders is not practicable.  Proposed orders that are not accompanied by one of the required declarations will be denied without prejudice.

**I.**     **Footnotes and Citations**

Footnotes are often unnecessary and must be employed sparingly.  When used, they shall appear in no less than 12-point type.  Excessive footnotes will be disregarded.

The Court prefers Westlaw citations for unpublished opinions that are not included in the Federal Appendix.

**J.**     **Courtesy Copies and Proposed Orders**

The Court requires courtesy copies of motions and related briefing, including attachments, exhibits, declarations, and other accompanying material.  The Court discourages the service of courtesy copies of any other documents, except when specifically requested by the Court.

Courtesy copies shall be double-sided and three-hole-punched at the left margin.  Courtesy copies of e-filed documents must bear the ECF stamp (case number, document number, date, and page number) on the top of each page.  Side tabs, rather than bottom tabs, should be used to separate exhibits.

The quality, condition, and labeling of binders, when used, should be such that the Court can easily identify, review, and transport the binders' contents.  Whenever possible, the spine of a binder should not exceed three inches in width, even if that limitation results in the use of more than one binder.

All courtesy copies or hard copies of documents must be lodged with the Clerk's office in Oakland.

Electronic copies of proposed orders must be sent in Word format to jstpo@cand.uscourts.gov.

**K.**     **Discovery Matters**

A party may not file a motion regarding a discovery dispute without leave of court.  If a discovery dispute arises, the parties shall meet and confer in good faith to attempt to resolve the dispute.  If the parties are unable to reach a resolution through this process, they shall file a joint letter brief of five pages or less that describes each disputed issue.  The joint letter brief must be

filed electronically in the Civil Events category of Motions and Related Filings  > Motions – General > Discovery Letter Brief.  After the letter brief is submitted, the Court will advise the parties as to how it intends to proceed, which may include referral of discovery disputes to a magistrate judge.

Dated:  May 18, 2021

_____
JON S. TIGAR
United States District Judge

*JST Civil Standing Order*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA


STANDING ORDER FOR CIVIL JURY TRIALS BEFORE
DISTRICT JUDGE JON S. TIGAR


**A.**     <u>**Meeting and Disclosure Prior to Pretrial Conference**</u>

At least twenty-one calendar days before the final pretrial conference, lead trial counsel shall meet and confer with respect to:

1.   Settlement of the case;

2.   Preparation of the joint pretrial statement;

3.   Preparation and exchange of pretrial materials to be served and lodged pursuant to Federal Rule of Civil Procedure 26(a)(3); and

4.   Clarifying and narrowing the contested issues for trial in order to achieve a just, speedy, and efficient resolution of the case.

**B.**     <u>**Joint Pretrial Statement**</u>

Unless otherwise ordered, the parties shall file and serve a joint pretrial statement no later than seven calendar days before the pretrial conference.  The statement shall contain the following information:

1.   <u>Substance of the Action</u>.  A brief description of the parties, the substance of claims and defenses that remain to be decided, and the operative pleadings.

2.   <u>Relief Requested</u>.  A detailed statement of all requested relief, including an itemization of all elements of damages claimed.

3.   <u>Undisputed Facts</u>.  A plain and concise statement of all relevant facts to which the parties will stipulate for incorporation into the trial record without supporting testimony or exhibits.  The parties shall exercise good faith in stipulating to facts that are not reasonably disputable.

4.   <u>Disputed Factual Issues</u>.  A plain and concise list of the issues of fact that are contested and remain to be litigated at trial.

5.   <u>Agreed Statement</u>.  A statement assessing whether all or part of the action may be presented upon an agreed statement of facts.

6.   <u>Stipulations</u>.  A statement of proposed stipulations or agreements that will expedite the presentation of evidence.

7.  <u>Witnesses to be Called</u>.  A list of all witnesses likely to be called at trial other than solely for impeachment or rebuttal, and a brief statement following each name describing the substance of the testimony to be given.  No party shall be permitted to call any witness in its case-in-chief who is not disclosed in its pretrial statement without leave of court.

8.  <u>Exhibits, Schedules, and Summaries</u>.  A list of all documents or other items to be offered as exhibits at trial, other than solely for impeachment or rebuttal, and a brief statement following each that describes: (1) its substance or purpose; (2) the identity of the sponsoring witness; and (3) whether the parties have stipulated to its admissibility and, if they have not, the objection to its admission, the grounds for the objection, and the position of the offering party.

9.  <u>Disputed Legal Issues</u>.  Without extended legal argument, a concise statement of each disputed point of law concerning liability or relief, citing supporting statutes and decisions.

10.  <u>Pending Motions or Matters</u>.  A statement of any motions or other matters that must be resolved prior to trial.

11.  <u>Bifurcation or Separate Trial of Issues</u>.  A statement of whether either party requests bifurcation or a separate trial of specific issues and why.

12.  <u>Use of Discovery Responses</u>.  Citations to all evidence that a party might introduce at trial, other than that to be used solely for impeachment or rebuttal, that was obtained from deposition testimony, interrogatory responses, or responses to requests for admission.  Counsel shall state any objections to the use of these materials and shall certify that they have conferred regarding such objections.  Counsel shall separately file a document containing each disputed discovery response or deposition testimony excerpt, and as to each shall state the objection to its admission, the grounds for the objection, and the position of the offering party.

13.  <u>Estimate of Trial Time</u>.  An estimate of the number of hours or days needed for the trial.

14.  <u>Settlement Discussion</u>.  A brief summary of the status of settlement negotiations, without indicating specific dollar amounts, and an indication of whether further negotiations are likely to be productive and what, if anything, would facilitate settlement.

15.  <u>Miscellaneous</u>.  Any other matters that will facilitate the just, speedy, and efficient resolution of the action.

**C.**     **Binding Effect of the Joint Pretrial Statement**

The joint pretrial statement described above shall include the following language directly above the signature lines:

> *The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this case, unless modified by the Court to prevent manifest injustice.*

**D.**     **Trial Exhibits**

1. Exchange of Exhibits.  At least twenty-one calendar days before the final pretrial conference, the parties shall exchange copies of all exhibits, summaries, charts, schedules, diagrams, and other similar documentary materials to be used in their case-in-chief, together with a complete list of all such proposed exhibits. Voluminous exhibits shall be reduced by elimination of irrelevant portions or through the use of summaries.

2. Objections to Exhibits. Following the exchange, the parties shall immediately meet and confer about the exhibits and any potential objections thereto, and shall make a good faith effort to stipulate to exhibits' admissibility.  If the parties cannot so stipulate, they shall make every effort to stipulate at least to authenticity and foundation absent a legitimate (not tactical) objection.

3. Pre-Marking.  Each exhibit shall be pre-marked with a trial exhibit sticker (not a deposition exhibit label).  The sticker shall be in the following format:

<div style="border:1px solid black;">

United States District Court
Northern District of California

**PLAINTIFF'S EXHIBIT 100**

Case No. _____

Date Entered _____

By _____
           Deputy Clerk

</div>

The parties shall mark their exhibits using non-overlapping ranges of numbers, leaving enough unused numbers that additional exhibits can be marked during trial. For example, the parties might agree that the plaintiff will use numbers 001–199 and the defendant will use numbers 200–399.

3

4. <u>Delivery</u>. Unless otherwise ordered, at least seven calendar days prior to the commencement of the trial, the parties shall deliver three sets of all pre-marked exhibits in clearly labeled three-ring binders to the Clerk's office, marked for the attention of the courtroom deputy. The quality, condition, and labeling of the binders should be such that the Court can easily transport and review the binders' contents. Whenever possible, the spine of a binder should not be wider than three inches.

5. All exhibits that have not been provided as required are subject to exclusion in the reasonable exercise of the Court's discretion.

## E.   <u>Motions in Limine</u>

Any party filing a motion in limine must first seek a stipulation from the opposing party or parties to the relief requested in the motion. Unless otherwise ordered, any party wishing to have motions in limine heard prior to the commencement of trial shall file and serve any such motions at least ten calendar days before the final pretrial conference. Any oppositions thereto shall be filed and served at least three calendar days before the final pretrial conference. No party shall file a reply. The motions will be heard at the pretrial conference or at such other time as the Court may direct, unless the Court determines that oral argument is unnecessary. The Court ordinarily does not grant leave to file motions in limine under seal.

## F.   <u>Jury Materials</u>

1. <u>Party Submissions</u>. Unless otherwise ordered, at least seven calendar days prior to the pretrial conference, the parties shall file and serve (a) jury voir dire questions, (b) proposed jury instructions; and (c) proposed jury verdict forms. The parties shall e-mail Word versions of all of these documents to jstpo@cand.uscourts.gov on the same day they file them.

2. <u>Voir Dire by Counsel</u>. In accordance with Federal Rule of Civil Procedure 47(a), voir dire by counsel will not be permitted absent leave of court.

3. <u>General Instructions</u>. Ordinarily, the Court will give the standard preliminary and closing jury instructions contained in the Model Jury Instructions of the Ninth Circuit. The preliminary jury instructions will ordinarily be given prior to opening statements.

4. <u>Specific Instructions</u>. The parties shall submit a set of agreed-upon case-specific instructions using the Ninth Circuit Model Jury Instructions or California Civil Jury Instructions (CACI) whenever possible. Proposed deviations from the model instructions, no matter how minor, must be clearly identified by red-lined copy and supported by authority.

The Court discourages the unnecessary submission of special instructions or modification of model instructions. Special instructions, if any, must be complete, accurate, balanced, clear, and non-argumentative. Any instruction to which the

<div align="center">4</div>

parties disagree must be marked as "disputed" and followed by concise argument and authority in support of and against the use of the instruction.

The parties' set of proposed jury instructions shall be ordered in logical sequence and include a table of contents.

**G.      Trial Briefs**

Trial briefs are optional, but any party wishing to file a trial brief must do so at least seven calendar days prior to the commencement of trial.

**H.      Continuances and Settlements**

Once set by the Court, trial dates are to be regarded as firm.  Continuances are disfavored.  For example, the Court will rarely continue a trial because the parties have "settled in principle."  A stipulated dismissal will ordinarily be required.  In accordance with Civil Local Rule 40-1, if the parties fail to proceed with a scheduled trial after a jury is empaneled, the Court may assess the costs of maintaining the jury against the parties or attorneys.

**I.      Opportunities for Junior Lawyers**

The Court strongly encourages the parties to permit junior lawyers to examine witnesses and to have an important role at trial.

**J.      Witnesses at Trial**

Unless otherwise ordered, each party shall notify all other parties by the close of each trial day of the witnesses that party intends to call on the following trial day.  Failure to comply with this order may, in the discretion of the Court, be grounds for exclusion of any witness who was not properly disclosed.

Once the cross-examination of a witness has commenced, and until cross-examination of the witness has concluded, counsel offering the witness on direct examination shall not: (a) consult or confer with the witness regarding the substance of the witness's testimony already given, or anticipated to be given, except for the purpose of conferring on whether to assert a privilege against testifying or on how to comply with a court order; or (b) suggest to the witness the manner in which any questions should be answered.  Once cross-examination has concluded, counsel is permitted to confer with the witness before redirect examination begins.

**K.      Post-Trial Retention of Exhibits**

At the conclusion of the trial, each party shall retain its exhibits throughout the appellate process. It is each party's responsibility to make arrangements with the Clerk to file the record on appeal.

**L.**     **Daily Transcripts and Real-Time Reporting**

Any party who would like a daily transcript or real-time reporting must contact Oakland Court Reporter Supervisor Odile Hansen at least fourteen calendar days before the first day of trial at (510) 637-3544 or Odile_Hansen@cand.uscourts.gov.

Dated:  August 26, 2019

_____
JON S. TIGAR
United States District Judge

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**STANDING ORDER GOVERNING ADMINISTRATIVE MOTIONS**
**TO FILE MATERIALS UNDER SEAL BEFORE**
**DISTRICT JUDGE JON S. TIGAR**

Any party seeking to file a document under seal must comply with this order and Civil Local Rule 79-5. A party who has designated material as confidential also must file a declaration in support of sealing that rebuts the strong presumption in favor of public access that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

**A.     Contents of Motions to File Under Seal**

Administrative motions to file materials under seal must contain the following information, presented in the following sequence:

1.   A statement that the filing party has reviewed and complied with this order.

2.   A statement that the filing party has reviewed and complied with Civil Local Rule 79-5.

3.   An identification of each document, documents, or portions of documents proposed to be sealed or redacted.

4.   A statement identifying the entity that has designated the materials to be sealed as confidential. If a party seeks to seal numerous documents, the Court will consider a chart that identifies the entity that designated each document as confidential.

5.   The filing party must serve the above items, this order, and a copy of Civil Local Rule 79-5, and file a certificate of service, with respect to (1) any party who is not on ECF; and (2) any non-party that has designated as confidential any material to be sealed.

**B.     Contents of Declarations and Proposed Orders Filed in Support of Sealing**

The following requirements apply only to the declaration and proposed order filed by the entity that has designated the material as confidential. Per the Court's Standing Order for All Civil Cases, electronic copies of proposed orders must be sent in Word format to jstpo@cand.uscourts.gov.

The declaration in support of sealing must establish, with reference to appropriate authority, that both of the following requirements are met:

1

1.  The document or document portion is "privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civil L.R. 79-5(b). Note that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).

2.  The strong presumption of access to judicial records is rebutted under the appropriate legal standard – i.e., the "good cause" or "compelling reasons" standard. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016) (discussing "good cause" and "compelling reasons" standards with respect to the merits of the motion to the underlying case). The declaration must identify the appropriate standard and articulate why the materials to be sealed satisfy that standard.

The proposed order must also identify the appropriate legal standard and satisfy Civil Local Rule 79-5(d)(1)(B), which requires a "proposed order that is narrowly tailored to seal only the sealable material, and which lists in table format each document or portion thereof that is sought to be sealed."

Dated:  January 25, 2021

_____
JON S. TIGAR
United States District Judge

2

*JST Sealing Motions Standing Order*

# STANDING ORDER FOR ALL JUDGES
## OF THE NORTHERN DISTRICT OF CALIFORNIA
## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1.  <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2.  <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3.  <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4.  <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

5.  <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6.  <u>Evidence Preservation</u>: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7.  <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8.  <u>Discovery</u>: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9.  <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

*Effective November 1, 2018*

12. <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. <u>Consent to Magistrate Judge For All Purposes</u>: Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes ___ No

14. <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. <u>Expedited Trial Procedure</u>: Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

17. <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

20. <u>Professional Conduct</u>: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

# United States District Court
# Northern District of California

## ECF Registration Information

Electronic Case Filing (ECF or "e-filing") is mandatory for all civil cases in this court. Please refer to Civil Local Rule 5-1 for the Court's rules pertaining to electronic filing. Effective August 19, 2013, e-filing of initiating documents (complaints; notices of removal) is allowed, but is not mandatory; all other documents must be e-filed in civil cases.

Parties who are representing themselves pro se (without attorney representation) are not required to e-file and, in fact, may e-file only with the permission of the assigned judge.

Please review and attend to the following important notes and tasks:

- Serve this ECF Registration Information Handout on all parties in the case along with the complaint or removal notice and the other documents generated by the court upon filing.

- If not already registered, each attorney in the case must register to become an e-filer at cand.uscourts.gov/ECF. Your ECF registration is valid for life in this district; please do not register more than once.

IMPORTANT NOTICE: by signing and submitting to the court a request for an ECF user id and password, you consent to entry of your email address into the court's electronic service registry for electronic service on you of all e-filed papers, pursuant to rules 77 and 5(b)(2)(d) of the Federal Rules of Civil Procedure.

- If you are a party and do not have an attorney and would like to e-file in the case, please visit cand.uscourts.gov/ECF/proseregistration for instructions and information. Unless and until the assigned judge has given you permission to e-file, you are required to file and serve papers in hard copy (paper) form.

- Access dockets and documents using your PACER (Public Access to Court Electronic Records) account. If your firm already has a PACER account, please use that account. It is not necessary to have individual PACER accounts for each user in your office. To set up an account, visit: pacer.gov or call (800) 676-6856.

ECF interactive tutorials, instructions for e-filing and other information are available at: cand.uscourts.gov/ECF.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Plaintiff(s), | Case No. |
| v. | **CONSENT OR DECLINATION TO MAGISTRATE JUDGE JURISDICTION** |
| Defendant(s). | |

**INSTRUCTIONS:** Please indicate below by checking **one** of the two boxes whether you (if you are the party) or the party you represent (if you are an attorney in the case) choose(s) to consent or decline to magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐ **CONSENT to Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

**OR**

☐ **DECLINE Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States magistrate judge conduct all further proceedings in this case and I hereby request that this case be reassigned to a United States district judge.

DATE: _____, 20_____        NAME: _____

_____
*Signature*

COUNSEL FOR
(OR "PRO SE"):

ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:21−cv−07006−JST

Twitch Interactive, Inc. v. CruzzControl et al
Assigned to: Judge Jon S. Tigar
Demand: $100,000
Cause: 28:1332 Diversity−Breach of Contract

Date Filed: 09/09/2021
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Twitch Interactive, Inc.**
*a Delaware Corporation*

represented by **Jacob Paul Dini**
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206) 359−8000
Email: JDini@perkinscoie.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Elizabeth Watts Staniar**
Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101
(206) 359−8000
Email: LStaniar@perkinscoie.com
*ATTORNEY TO BE NOTICED*

**Katherine M. Dugdale**
Perkins Coie LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067−1721
310−788−3200
Fax: 310−788−3399
Email: kdugdale@perkinscoie.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CruzzControl**
*an individual*

**Defendant**

**CreatineOverdose**
*an individual*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/09/2021 | 1 | COMPLAINT against CreatineOverdose, CruzzControl ( Filing fee $ 402, receipt number 0971−16374616.). Filed byTwitch Interactive, Inc.. (Attachments: # 1 Civil Cover Sheet)(Dugdale, Katherine) (Filed on 9/9/2021) (Entered: 09/09/2021) |
| 09/09/2021 | 2 | Certificate of Interested Entities by Twitch Interactive, Inc. identifying Corporate Parent Amazon.com, Inc. for Twitch Interactive, Inc.. (Dugdale, Katherine) (Filed on 9/9/2021) (Entered: 09/09/2021) |
| 09/09/2021 | 3 | Corporate Disclosure Statement by Twitch Interactive, Inc. identifying Corporate Parent Amazon.com, Inc. for Twitch Interactive, Inc.. (Dugdale, Katherine) (Filed on |

| | | |
|---|---|---|
| | | 9/9/2021) (Entered: 09/09/2021) |
| 09/10/2021 | 4 | Case assigned to Magistrate Judge Sallie Kim.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E−Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5−1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 9/24/2021. (asS, COURT STAFF) (Filed on 9/10/2021) (Entered: 09/10/2021) |
| 09/10/2021 | 5 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 12/6/2021. Initial Case Management Conference set for 12/13/2021 01:30 PM in San Francisco, Courtroom C, 15th Floor. (fabS, COURT STAFF) (Filed on 9/10/2021) (Entered: 09/10/2021)** |
| 09/10/2021 | 6 | Proposed Summons. (Dugdale, Katherine) (Filed on 9/10/2021) (Entered: 09/10/2021) |
| 09/10/2021 | 7 | Summons Issued as to CreatineOverdose, CruzzControl. (fabS, COURT STAFF) (Filed on 9/10/2021) (Entered: 09/10/2021) |
| 09/24/2021 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Twitch Interactive, Inc... (Dugdale, Katherine) (Filed on 9/24/2021) (Entered: 09/24/2021) |
| 09/24/2021 | 9 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE−NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (mklS, COURT STAFF) (Filed on 9/24/2021) (Entered: 09/24/2021) |
| 09/27/2021 | 10 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge Jon S. Tigar for all further proceedings. Magistrate Judge Sallie Kim no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras.. Signed by Clerk on 09/27/2021. (Attachments: # 1 Notice of Eligibility for Video Recording)(mbcS, COURT STAFF) (Filed on 9/27/2021) (Entered: 09/27/2021)** |
| 09/27/2021 | 11 | CLERK'S NOTICE SETTING CASE MANAGEMENT CONFERENCE. Case Management Statement due by 12/28/2021. Initial Case Management Conference set for 1/4/2022 02:00 PM in Oakland, – Videoconference Only. This proceeding will be held via a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jst<br><br>**Court Appearances:** Advan ced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. One list of names of all counsel appearing for all parties must be sent in one email to the CRD at JSTCRD@cand.uscourts.gov no later than January 3, 2022 by 2:00 p.m. |

| | | General Order 58. Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/ zoom/.<br><br>Case Management Statement due by 12/28/2021. Initial Case Management Conference set for 1/4/2022 02:00 PM in Oakland, – Videoconference Only. (mllS, COURT STAFF) (Filed on 9/27/2021) (Entered: 09/27/2021) |
|---|---|---|
| 10/01/2021 | 12 | MOTION for leave to appear in Pro Hac Vice *(Lauren Watts Staniar)* ( Filing fee $ 317, receipt number 0971–16456025.) filed by Twitch Interactive, Inc.. (Staniar, Lauren) (Filed on 10/1/2021) (Entered: 10/01/2021) |
| 10/04/2021 | 13 | **Order by Judge Jon S. Tigar granting 12 Motion for Pro Hac Vice as to Lauren Watts Staniar.(mllS, COURT STAFF) (Filed on 10/4/2021) (Entered: 10/04/2021)** |
| 10/04/2021 | 14 | MOTION for leave to appear in Pro Hac Vice *Jacob Dini* ( Filing fee $ 317, receipt number 0971–16462010.) filed by Twitch Interactive, Inc.. (Dini, Jacob) (Filed on 10/4/2021) (Entered: 10/04/2021) |
| 10/13/2021 | 15 | **Order by Judge Jon S. Tigar granting 14 Motion for Pro Hac Vice as to Jacob Dini.(mllS, COURT STAFF) (Filed on 10/13/2021) (Entered: 10/13/2021)** |
| 10/21/2021 | 16 | AMENDED COMPLAINT against CreatineOverdose, CruzzControl. Filed by Twitch Interactive, Inc.. (Dugdale, Katherine) (Filed on 10/21/2021) (Entered: 10/21/2021) |