# EXHIBIT B

## Bacos, Caleb (SEA)

| | |
|---|---|
| **From:** | Dini, Jacob  (SEA) <JDini@perkinscoie.com> |
| **Sent:** | Monday, November 15, 2021 3:51 PM |
| **To:** | goomlygoom@gmail.com |
| **Cc:** | Staniar, Lauren (SEA) |
| **Subject:** | RE: Twitch Interactive, Inc. v. Vostermans, et al, Case No. 21-cv-7006-JST (N.D. Cal.) |
| **Attachments:** | Ex Parte Application FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO RULE 26(f) CONFERENCE AND.pdf; Attachments # (1) Declaration of Katherine M. Dugdale.pdf; Attachments # (2) Exhibit A-B.pdf; Attachments # (3) Proposed Order)(Dugdale, Katherine) (Filed on 11152021).pdf |

Dear Sir or Madam,

Please see attached Twitch's Ex Parte Application for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference and supporting documents filed today in the above-captioned matter.

Best,

**Jacob Dini | Perkins Coie LLP**
ASSOCIATE
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3832
F. +1.206.359.4832
E. JDini@perkinscoie.com

**Read our Commitment to Racial Equality: www.perkinscoie.com/racialequality**



---

**From:** Staniar, Lauren (SEA) <LStaniar@perkinscoie.com>
**Sent:** Friday, October 22, 2021 3:20 PM
**To:** goomlygoom@gmail.com
**Cc:** Dini, Jacob (SEA) <JDini@perkinscoie.com>
**Subject:** Twitch Interactive, Inc. v. Vostermans, et al, Case No. 21-cv-7006-JST (N.D. Cal.)

Please see the attached correspondence regarding *Twitch Interactive, Inc. v. Vostermans, et al*, Case No. 21-cv-7006-JST (N.D. Cal.).

**Lauren Watts Staniar | Perkins Coie LLP**
COUNSEL
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3316
C. +1.202.400.0925
F. +1.206.359.4316
E. LStaniar@perkinscoie.com
Pronouns: she, her and hers

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Lauren Watts Staniar, *pro hac vice*
LStaniar@perkinscoie.com
Jacob P. Dini, *pro hac vice*
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98102
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS VOSTERMANS, an individual; CREATINEOVERDOSE, an individual,<br><br>Defendants. | Case No. 4:21-cv-7006-JST<br><br>**PLAINTIFF TWITCH INTERACTIVE, INC.'S EX PARTE APPLICATION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO RULE 26(f) CONFERENCE AND MEMORANDUM IN SUPPORT**<br><br>**[L. Civ. R. 7-10]** |

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

2            PLEASE TAKE NOTICE that Plaintiff Twitch Interactive, Inc., will and hereby does

3    apply to the Court *ex parte* for leave to issue third-party subpoenas to Defendant

4    CreatineOverdose's email service provider and video game community website to identify

5    CreatineOverdose prior to a Federal Rule of Civil Procedure 26(f) conference.  This motion

6    complies with Local Civil Rule 7-10 because, as explained in the motion, CreatineOverdose is a

7    real person amenable to suit in California;[1] Twitch's Complaint would withstand a motion to

8    dismiss; and the requested discovery is likely to uncover CreatineOverdose's identity.  *Skout, Inc*

9    *v. Jen Processing, Ltd.*, No. 14-CV-02341-JSC, 2015 WL 224930, at *2 (N.D. Cal. Jan. 15,

10   2015); *see also Coen Co., Inc. v. Pan Int'l, Ltd.*, No. 2014 WL 3924636, at *5 (N.D. Cal. Aug. 8,

11   2014) (Tigar, J.) (granting motion for expedited discovery).  Good cause therefore exists for

12   expedited discovery in this matter under Federal Rule of Civil Procedure 26(d)(1).

13           This application is based on: the memorandum of points and authorities; the declaration of

14   Katherine M. Dugdale filed concurrently herewith and all attached exhibits; all pleadings and

15   evidence on file in this matter; and on such additional evidence or arguments as the Court may

16   deep proper.

---

[1] Twitch will send CreatineOverdose a copy of this motion and associated papers by email.

APP. FOR EXPEDITED DISCOVERY
CASE NO. 4:21-cv-07006

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................................... 6

II.    ISSUE TO BE DECIDED (L. CIV. R. 7-4(A)(3)) ................................... 6

III.   FACTS & PROCEDURAL BACKGROUND ........................................... 6

    A.     Twitch ........................................................................................... 6

    B.     Defendants' Wrongdoing .............................................................. 7

    C.     Twitch's Investigation .................................................................. 8

IV.    ARGUMENT ............................................................................................ 9

    A.     Twitch Has Sufficiently Identified CreatineOverdose ............... 10

    B.     Twitch Has Made a Good Faith Effort to Locate CreatineOverdose ................... 12

    C.     Twitch's Complaint Could Withstand a Motion to Dismiss ........ 13

        1.     Breach of contract ............................................................ 13

        2.     Fraud in the inducement .................................................. 14

    D.     There is a Reasonable Likelihood the Proposed Discovery Will Uncover the Identity of CreatineOverdose. ........................ 15

    E.     There Is No Prejudice From the Proposed Discovery .................. 15

V.     CONCLUSION ....................................................................................... 15

APP. FOR EXPEDITED DISCOVERY
CASE NO. 4:21-cv-07006

1

2

## TABLE OF AUTHORITIES

PAGE(S)

3

**CASES**

4

*Coen Co., Inc. v. Pan Int'l, Ltd.*,
5
   No. 14-cv-03392-JST, 2014 WL 3924636 (N.D. Cal. Aug. 8, 2014) (Tigar, J.)......................10

6

*Columbia Ins. Co. v. seescandy.com*,
   185 F.R.D. 573 (N.D. Cal. 1999)......................................................................................12, 15

7

8

*Gen. Motors L.L.C. v. Autel. US Inc.*,
   Case No. 14-cv-14864, 2016 WL 1223357 (E.D. Mich. Mar. 29, 2016) ................................12

9

*Lazar v. Super. Ct.*,
10
   909 P.2d 981 (Cal. 1996) .......................................................................................................14

11

*Marketo, Inc. v. Doe*,
   Case No. 18-cv-06792, 2018 WL 6046464 (N.D. Cal. Nov. 19, 2018)...................................10

12

13

*Microsoft Corp. v. Mountain W. Computers, Inc.*,
   No. C14-1772RSM, 2015 WL 4479490 (W.D. Wash. July 22, 2015) ...................................12

14

*OpenMind Solutions, Inc. v. Does 1–39*,
15
   No. 11–3311, 2011 WL 4715200 (N.D. Cal. Oct.7, 2011).......................................................10

16

*Parino v. BidRack, Inc.*,
   838 F. Supp. 2d 900 (N.D. Cal. 2011) ...................................................................................14

17

18

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002)...............................................................................9, 10, 15

19

*Skout, Inc v. Jen Processing, Ltd.*,
20
   No. 14-CV-02341-JSC, 2015 WL 224930 (N.D. Cal. Jan. 15, 2015) ...............................10, 11

21

*Strike 3 Holdings v. Doe*,
   Case No. 18-cv-06938-WHO, 2019 WL 402358 (N.D. Cal. Jan. 31, 2019) ......................10, 13

22

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
23
   306 F. Supp. 3d 1178–79 (C.D. Cal. 2018) ............................................................................14

24

*Twitch Interactive, Inc. v. Does 1 Through 100*,
   No. 19-cv-03418-WHO, 2019 WL 3718582 (N.D. Cal. Aug. 7, 2019) ......................10, 14, 15

25

*Twitch Interactive, Inc. v. Johnston*,
26
   No. 16-cv-03404-BLF, 2018 WL 1449525 (N.D. Cal. Jan. 22, 2018) ....................................14

27

*Wakefield v. Thompson*,
28
   177 F.3d 1160 (9th Cir. 1999)................................................................................................10

APP. FOR EXPEDITED DISCOVERY
CASE NO. 4:21-cv-07006

# TABLE OF AUTHORITIES

**PAGE(S)**

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) (en banc)...................................................................11

*Yelp Inc. v. Catron*,
  70 F. Supp. 3d 1082 (N.D. Cal. 2014) ........................................................11, 13, 14

**RULES**

Fed. R. Civ. P. 26(d)(1)..................................................................................................9

## I.   INTRODUCTION

Beginning in or about August 2021, Defendants Chris Vostermans (aka "CruzzControl") and CreatineOverdose started flooding the chat feeds of streamers' live broadcasts on Twitch.tv, one of the world's leading real-time video streaming services, with hateful and highly offensive content. These "hate raids" targeted marginalized groups with hundreds of bot-powered messages that spewed racist, sexist, and homophobic language and content. Defendants' hate raids violate Twitch's Terms of Service and Community Guidelines, which endeavor to create a safe and accessible community for Twitch viewers and streamers and therefore ban the type of hate speech propagated by Defendants. After filing this lawsuit, Twitch continued investigating Defendants with the goal of connecting Defendants' online personas with real people. Twitch's investigation was successful in part: it uncovered the identity of one previously anonymous Defendant—Chris Vostermans. Despite Twitch's substantial efforts, it has been unable to identify Defendant CreatineOverdose, who has anonymized his/her account information on Twitch to evade identification.

Twitch moves this Court for an order allowing it to take discovery from third parties Google and Valve Corporation to obtain information that is reasonably likely to lead to the identity of CreatineOverdose. As set forth below, good cause exists to allow the proposed discovery.

## II.   ISSUE TO BE DECIDED (L. CIV. R. 7-4(a)(3))

Whether Twitch is entitled to expedited discovery from third parties Google and Valve Corporation to obtain information that is reasonably likely to identify CreatineOverdose such that Twitch can effectuate service.

## III.   FACTS & PROCEDURAL BACKGROUND

### A.   Twitch

Twitch is a real-time streaming video service where community members gather to watch, play, and chat about shared interests—predominantly video games, sports, and creative arts. Am. Compl. (ECF No. 1) ¶¶ 1, 16. Twitch, headquartered in San Francisco, has a global reach. *Id.* ¶¶ 12, 16. Each month, more than seven million unique streamers from around the world

entertain millions of viewers by streaming live content on Twitch. *Id.* ¶ 16. Streamers work hard to create and foster authentic, passionate, and loyal communities on Twitch, often by building an identity on Twitch outside of their work as a content creator. *Id.* ¶ 18. Twitch hosts millions of diverse individuals, including streamers, and has created programs to support creators of color and other individuals from marginalized groups. *Id.* ¶ 19.

Twitch's chat function is one way streamers can communicate and engage with their communities on Twitch. *Id.* ¶ 20. Community members can post in the chat to encourage the streamer, provide support, or send Twitch-specific emojis in the chat, and streamers can respond in kind. *Id.* ¶ 21. Streamers and viewers must create a Twitch account to use the chat function. *Id.* ¶ 23. To create an account on Twitch.tv or otherwise access the Twitch Services (the network of websites hosted by Twitch), a user agrees to be bound by, among other things, Twitch's Terms of Service. *Id.* ¶¶ 27–28.

The safety of Twitch's community is its top priority. For this reason, Twitch's Terms of Service and Community Guidelines (collectively, the "Terms") expressly prohibit users from creating, uploading, or streaming any content that is unlawful, defamatory, obscene, pornographic, violent, harassing, threatening, abusive, or otherwise objectionable. *Id.* ¶ 30. The Terms further prohibit "hateful conduct and harassment," including harassment based on "race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender, gender identity, sexual orientation, disability, serious medical condition, and veteran status." *Id.* ¶ 34. The Terms also prohibit streamers from using "bots"—computer programs designed to mimic real users on Twitch—that "engage in offensive or deceptive practices (e.g., generate hate speech [or] send spam . . . )." *Id.* ¶¶ 26, 30.

## B. Defendants' Wrongdoing

Beginning in or about August 2021, Defendants began coordinating attacks on Twitch streamers by raiding their channels and spamming the streamers with hate ("hate raids") that, in some cases, were directed to streamers who identified themselves as racial minorities and/or members of the LGBTQ+ community. *Id.* ¶ 42. Defendants used "bot" accounts created for the sole purpose of launching large scale, automated attacks against Twitch and its community to

1  spew racial slurs, personally identifying information, and malicious links (e.g., gore videos

2  designed to shock/offend).  These bot accounts enabled Defendant to spew hate at a robotic pace,

3  sending dozens of messages per minute that outpaced the stream moderator's ability to manage

4  the chat.  *Id.* ¶ 43.

5        Defendant CreatineOverdose has been linked directly to the hate raids.  On August 15,

6  2021, CreatineOverdose used its bot software to demonstrate how it could be used to spam

7  Twitch channels with racial slurs, graphic descriptions of violence against minorities, and claims

8  that the hate raiders are the "K K K."  *Id.* ¶ 48.  Hate raid victims documented CreatineOverdose

9  participating in hate raids on their channels.  Am. Compl. ¶¶ 49, 57.

10        CreatineOverdose's actions harm Twitch and the Twitch community.  *Id.* ¶¶ 48–49, 56–

11  57.  As a result of the hate raids, streamers were forced to limit who can engage with their chat

12  feature, and some have even been forced to stop streaming altogether.  *Id.* ¶¶ 50–51.  Twitch also

13  took action to combat the hate raids, including banning CreatineOverdose's known accounts,

14  updating Twitch's software to add additional measures that better detect malicious bot software,

15  and implementing stricter identity controls.  *Id.* ¶¶ 52, 58–59.  Twitch also expended time and

16  money investigating CreatineOverdose, mobilizing its communications staff to address the harm

17  to Twitch's community, and working with impacted streamers to educate them on moderation

18  toolkits for their chats.  *Id.* ¶ 59.

19  **C.**    **Twitch's Investigation**

20        Twitch immediately started investigating who was responsible for the attacks.

21  Declaration of Katherine M. Dugdale ("Dugdale Decl.") ¶ 3.  Through reports submitted to

22  Twitch via Twitch's reporting tool and social media (e.g., Twitter), Twitch was able to identify

23  several key actors involved in the hate raids, including two individuals operating on Twitch as

24  CruzzControl and CreatineOverdose.  *Id.* ¶ 4.  After discovering these accounts were associated

25  with substantial hate raid activities, Twitch identified key information associated with each

26  account, as well additional Twitch accounts owned by the perpetrators.  *Id.*  Since filing the

27  original Complaint, Twitch found Defendant CruzzControl, identifying him as Chris Vostermans.

28  

APP. FOR EXPEDITED DISCOVERY
CASE NO. 4:21-cv-07006

But, despite its continued investigation, Twitch has not been able to find CreatineOverdose. Twitch has identified an email address—goomlygoom@gmail.com— associated with the CreatineOverdose Twitch account. *Id.* ¶ 5. Twitch has also identified (and banned) a number of alternate accounts created by CreatineOverdose, but CreatineOverdose took substantial steps to hide their identity. For example, CreatineOverdose used tool(s) to hide their true IP address and location; CreatineOverdose also used multiple "dummy" email accounts. *Id.* ¶ 6. Finally, Twitch searched public sources in an effort to identify CreatineOverdose. This included searching public records using information Twitch has uncovered about CreatineOverdose and searching the Internet for social media and video-game related communities that use CreatineOverdose and similar usernames. *Id.* ¶ 7. Through these searches, Twitch identified a single Steam[2] account that had used the username "CreatineOverdose." *Id.*

Twitch sued Defendants on September 9, 2021 seeking damages and a permanent injunction that would bar Defendants from conducting hate raids. *See* Compl. On October 21, 2021, Twitch amended its complaint to name Chris Vostermans also known as CruzzControl. *See* Am. Compl. On October 22, Twitch sent a copy of the Amended Complaint; a notice of lawsuit and waiver of service form; and a copy of this Court's standing orders to the email address associated with CreatineOverdose's original Twitch account. Dugdale Decl. ¶ 9, Ex. A. Twitch asked CreatineOverdose to identify themself and waive service. *Id.* CreatineOverdose has not responded. *Id.*

## IV.    ARGUMENT

A court may authorize discovery to be taken before the parties' Rule 26(f) conference for "good cause." Fed. R. Civ. P. 26(d)(1); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."

---

[2] Owned by Valve Corporation, Steam is "the ultimate destination for playing, discussing, and creating games." Dugdale Decl., Ex. B. (https://store.steampowered.com/about/). Steam also includes a social community, enabling users to "meet new people, join groups, form clans, chat in-game and more". *Id.* Twitch believes that Defendants, including CreatineOverdose, may contact others that perform hate raids through platforms like Steam. Compl. ¶ 53.

1   *Coen Co., Inc. v. Pan Int'l, Ltd.*, No. 14-cv-03392-JST, 2014 WL 3924636, at*5 (N.D. Cal. Aug.

2   8, 2014) (Tigar, J.) (quoting *Semitool*, 208 F.R.D. at 276).  "'[W]here the identity of alleged

3   defendants [is not] known prior to the filing of a complaint[,] the plaintiff should be given an

4   opportunity through discovery to identify the unknown defendants, unless it is clear that

5   discovery would not uncover the identities, or that the complaint would be dismissed on other

6   grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).  Courts frequently grant

7   *ex parte* motions for expedited discovery relating to the identities of Doe defendants.  *See, e.g.*,

8   *Twitch Interactive, Inc. v. Does 1 Through 100*, No. 19-cv-03418-WHO, 2019 WL 3718582, at

9   *6 (N.D. Cal. Aug. 7, 2019) (granting *ex parte* application for leave to serve third-party subpoena

10  to identify Doe defendants conducting attack on Twitch services); *Strike 3 Holdings v. Doe*, Case

11  No. 18-cv-06938-WHO, 2019 WL 402358, at *2–3 (N.D. Cal. Jan. 31, 2019) (granting *ex parte*

12  application for leave to serve third-party subpoena); *Marketo, Inc. v. Doe*, Case No. 18-cv-06792,

13  2018 WL 6046464, at *2–3 (N.D. Cal. Nov. 19, 2018) (granting *ex parte* application to serve

14  Rule 45 subpoenas in order to identify Doe defendants).

15       To determine whether "good cause" exists, courts consider whether:

16       (1) the plaintiff can identify the missing party with sufficient specificity such that
    the Court can determine that defendant is a real person or entity who could be sued

17       in federal court; (2) the plaintiff has identified all previous steps taken to locate the
    elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion

18       to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood
    of being able to identify the defendant through discovery such that service of process

19       would be possible.

20

21  *Skout, Inc v. Jen Processing, Ltd.*, No. 14-CV-02341-JSC, 2015 WL 224930, at *2 (N.D. Cal.

22  Jan. 15, 2015) (citing *OpenMind Solutions, Inc. v. Does 1–39*, No. 11–3311, 2011 WL 4715200,

23  at *2 (N.D. Cal. Oct.7, 2011)).  Discovery should be allowed here because Twitch satisfies each

24  of these criteria, and the need for discovery outweighs any prejudice to the responding party.

25  **A.    Twitch Has Sufficiently Identified CreatineOverdose**

26       Under the first factor, a court must consider "whether the Plaintiff has identified the

27  Defendants with sufficient specificity, demonstrating that each Defendant is a real person or

28

1    entity who would be subjected to jurisdiction in this Court." *Skout*, 2015 WL 224930, at *2. To

2    establish specific personal jurisdiction, "(1) the non-resident defendant must purposefully direct

3    his activities into the forum or purposefully avail himself of the privilege of conducting activities

4    in the forum; (2) the claim must arise out of or relate to forum related activities; and (3) the

5    exercise of jurisdiction must comport with fair play and substantial justice." *Id.* These elements

6    are met here.

7            First, CreatineOverdose is a real person amenable to suit in federal court.

8    CreatineOverdose is associated with specific acts of breach of contract and fraud in inducement.

9    Am. Compl. ¶¶ 42–43, 48–49. CreatineOverdose coordinated hate raid attacks on Twitch by

10   developing and deploying bot software to flood streamers' chat with hate-filled and obscene text,

11   including racial slurs, personally identifying information, and malicious links over a short period

12   of time. *Id.* ¶¶ 48–49. On information and belief, CreatineOverdose also coordinated with their

13   self-described "hate raiding community" on Steam. *Id.* ¶ 55. These sophisticated

14   communications across platforms were not the work of bots. Further, Twitch investigated

15   CreatineOverdose's Twitch accounts and concluded that several of those accounts are operated by

16   a real person, not bots. Dugdale Decl. ¶ 4. CreatineOverdose is therefore amenable to suit in

17   federal court.

18           Second, this Court has personal jurisdiction over CreatineOverdose given their significant

19   contact with California. "[A] court may exercise personal jurisdiction over a defendant consistent

20   with due process only if he or she has certain minimum contacts with the relevant forum such that

21   the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

22   *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205, 1211

23   (9th Cir. 2006) (en banc) (cleaned up). That standard is easily met here: CreatineOverdose

24   entered into a contract with Twitch, a California resident, by agreeing to the Terms. Am. Compl.

25   ¶¶ 27, 63; *Yahoo!*, 433 F.3d at 1206 (key factor in determining personal jurisdiction is whether

26   the non-resident defendant "consummate[d] some transaction with the forum or resident

27   thereof"). CreatineOverdose also intentionally directed their tortious actions at Twitch, a

28   California company. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082 (N.D. Cal. 2014) (finding personal

-11-                                    APP. FOR EXPEDITED DISCOVERY
                                        CASE NO. 4:21-cv-07006

1    jurisdiction where Catron "targeted Yelp, a company he knew to be located in California, by

2    advertising to sell authentic Yelp reviews, selling Yelp reviews, and using Yelp's registered

3    trademarks").  Finally, CreatineOverdose knowingly targeted Twitch users, whose information is

4    stored on Twitch's servers in California, in order to flood Twitch streamers' chats with obscene

5    text, racial slurs, personally identifying information, and malicious links.  Am. Compl. ¶¶ 42–53;

6    Dugdale Decl. ¶ 8.

7           This case arises out of these forum related activities: CreatineOverdose contacted

8    Twitch's servers under fraudulent pretenses to use bot accounts to raid other Twitch users'

9    streams to spew hate speech.  These are the exact wrongs for which Twitch is suing.  Am. Compl.

10   ¶¶ 42–53.  This Court has personal jurisdiction over CreatineOverdose.  *Gen. Motors L.L.C. v.*

11   *Autel. US Inc.*, Case No. 14-cv-14864, 2016 WL 1223357, at *4 (E.D. Mich. Mar. 29, 2016)

12   ("that Autel ITC has reached into Michigan to access GM's intellectual property located on its

13   servers residing in Michigan . . . . is an example of purposeful availment"); *see also Microsoft*

14   *Corp. v. Mountain W. Computers, Inc.*, No. C14-1772RSM, 2015 WL 4479490, at *7 (W.D.

15   Wash. July 22, 2015) (finding personal jurisdiction where the "Defendants alleged actions were

16   intentional and directed at Plaintiff" in the forum state.).

17   **B.     Twitch Has Made a Good Faith Effort to Locate CreatineOverdose**

18          The second factor requires a party to identify the previous steps taken to locate the

19   defendant.  *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999).  "This

20   element is aimed at ensuring that plaintiffs make a good faith effort to comply with the

21   requirements of service of process and specifically identifying defendants."  *Id.*

22          This requirement is satisfied because Twitch has attempted in good faith to identify

23   CreatineOverdose but has been unable to do so.  Based on reports from the Twitch community

24   and its own internal investigation, Twitch identified Twitch users CruzzControl and

25   CreatineOverdose as individuals involved in the hate raids.  Dugdale Decl. ¶ 4.  Through diligent

26   search, Twitch identified and named CruzzControl.  Am. Compl. ¶ 47.  Twitch has engaged in

27   similar investigation to identify CreatineOverdose.  Twitch identified one Google email address

28   associated with CreatineOverdose's original Twitch account.  Dugdale Decl. ¶ 5.  Twitch sent the

1   Amended Complaint and associated documents to this email address, but CreatineOverdose has

2   not responded.  Dugdale Decl. ¶92 & Ex. A.  Twitch attempted to identify CreatineOverdose's

3   location through IP addresses associated with CreatineOverdose's primary and alternate Twitch

4   accounts, but the IP addresses indicate that CreatineOverdose is attempting to hide their true

5   location.  Dugdale Decl. ¶ 6.  Finally, Twitch searched public records, social media, and video-

6   game communities based on the information currently known about CreatineOverdose.  *Id.* ¶ 7.

7   Through these searches, Twitch identified a single Steam account that previously used the

8   username "CreatineOverdose."  *Id.*  Twitch was unable to find a physical address or name

9   associated with CreatineOverdose such that it could complete service of process.  This element is

10  satisfied.  *See Strike 3 Holdings*, 2019 WL 402358, at *2.

## C.    Twitch's Complaint Could Withstand a Motion to Dismiss

12       The third factor requires that a plaintiff's claim would survive a motion to dismiss.  *Id.*

13  The Complaint alleges breach of contract and fraud in the inducement.  Twitch has sufficiently

14  pled each cause of action.

### 1.    Breach of contract

16       "A claim for breach of contract is comprised of a contract, plaintiff's performance or

17  excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff."  *Yelp

18  Inc., v. Catron*, 70 F. Supp. 3d 1082, 1099 (N.D. Cal. 2014).

19       Twitch has sufficiently pled these elements.  The Terms is a contract to which

20  CreatineOverdose agreed when they created accounts on or otherwise used the Twitch Services.

21  *See id.* (holding that website's terms of service is a contract); Am. Compl. ¶¶ 27, 65–66.

22  CreatineOverdose violated the Terms by posting content on Twitch.tv that the Terms expressly

23  prohibit, including racist, homophobic, and highly offensive content and harassing users of the

24  Twitch Services.  *See id.* ¶ 69.  CreatineOverdose also violated the Terms by, among other things,

25  manipulating their identifying information to disguise the origin of their activities, accessing the

26  Twitch Services with prohibited bots, and creating fake accounts to access the Twitch services

27  after Twitch banned them.  *Id.*

28

1    Twitch performed its obligations under the Terms and was harmed by CreatineOverdose's

2    actions—CreatineOverdose's hate raids required Twitch to spend time and money investigating

3    CreatineOverdose and develop technological and other fixes to attempt to stop

4    CreatineOverdose's harassing and hateful conduct. *Id.* ¶¶ 59, 73.

5    These allegations are more than sufficient to state a claim for breach of contract. *See, e.g.*,

6    *Yelp*, 70 F. Supp. 3d at 1099; *Twitch Interactive, Inc. v. Does 1 Through 100*, No. 19-cv-3418-

7    WHO, 2019 WL 3718582, at *4; *Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF,

8    2018 WL 1449525, at *7–8 (N.D. Cal. Jan. 22, 2018).

9        **2.      Fraud in the inducement**

10   In order to state a claim for fraud in the inducement, the plaintiff must allege: "(a) a

11   misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge

12   of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage."

13   *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 906 (N.D. Cal. 2011) (citing *Lazar v. Super. Ct.*,

14   909 P.2d 981, 984 (Cal. 1996)).

15   Twitch has pled these elements. Beginning in or about August 2021, CreatineOverdose

16   started registering Twitch accounts, and in doing so represented that they would agree to be

17   bound by the Terms, including agreeing that they would not conduct "hostile raids"; post hateful

18   and harassing content on Twitch; harass or defame other Twitch users; or deploy bots in an

19   unauthorized manner on Twitch. Am. Compl. ¶¶ 42, 76–77. Knowing that Twitch had banned

20   CreatineOverdose's known Twitch accounts, CreatineOverdose created additional Twitch

21   accounts, thereby agreeing to the Terms and falsely representing to Twitch that they would not

22   post content that violated the Terms with the intent to induce Twitch into permitting

23   CreatineOverdose to further access the Twitch Services. *See* Am. Compl. ¶¶ 52, 78–82. Twitch

24   granted CreatineOverdose access to the Twitch Services in reliance on their representation that

25   CreatineOverdose would not violate the Terms, and Twitch was harmed when CreatineOverdose

26   conducted hate raids on Twitch. *Id.* ¶¶ 83–84. Twitch has stated a claim for fraud in the

27   inducement. *See, e.g., Parino*, 838 F. Supp. 2d at 906; *Ticketmaster L.L.C. v. Prestige Entm't*,

28   *Inc.*, 306 F. Supp. 3d 1178–79 (C.D. Cal. 2018) (denying motion to dismiss fraud in the

inducement claim based on defendants' representation that they would comply with plaintiff's Terms of Use when they went on to breach the Terms of Use by using bots on plaintiff's services).

**D.    There is a Reasonable Likelihood the Proposed Discovery Will Uncover the Identity of CreatineOverdose.**

The final factor concerns whether there is a reasonable likelihood the proposed discovery will uncover the identities of the defendant. *Columbia*, 185 F.R.D. at 579 (citation omitted).  The subpoenas to Google and Valve Corporation should yield identification information for CreatineOverdose (e.g., name or physical address), and/or other information that could lead to identification information for CreatineOverdose (e.g., additional email address(es) or IP address(es)).  This data will likely allow Twitch to identify CreatineOverdose. *See Twitch Interactive, Inc. v. Does 1 Through 100*, 2019 WL 3718582, at *5 (permitting Twitch to serve similar subpoenas to similar entities to identify Doe defendants).

**E.    There Is No Prejudice From the Proposed Discovery**

The proposed discovery will not prejudice the responding parties. *See Semitool*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.").  Google and Valve Corporation are established companies who routinely deal with discovery requests.  These companies would suffer little burden from producing data regarding account information.[3]  And, Twitch will be unable to locate and serve CreatineOverdose without the requested discovery.  Accordingly, Twitch's need for discovery to identify CreatineOverdose outweighs any prejudice to the responding parties.

## V.    CONCLUSION

For the foregoing reasons, Twitch respectfully requests that the Court grant its application for limited expedited discovery and permit it to serve third-party subpoenas on Google and Valve Corporation.

---

[3] Twitch will provide the Court a copy of the proposed subpoenas upon request.

1

DATED:  November 15, 2021

**PERKINS COIE LLP**

2

3

By: */s/Katherine M. Dugdale*
Katherine M. Dugdale, Bar No. 168014

4

KDugdale@perkinscoie.com
Lauren Watts Staniar, *pro hac vice*

5

LStaniar@perkinscoie.com
Jacob P. Dini, *pro hac vice*

6

JDini@perkinscoie.com

7

Attorneys for Plaintiff
Twitch Interactive, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Katherine M. Dugdale, Bar No. 168014
KDugdale@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Lauren Watts Staniar, *pro hac vice*
LStaniar@perkinscoie.com
Jacob P. Dini, *pro hac vice*
JDini@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98102
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Plaintiff
Twitch Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS VOSTERMANS, an individual; CREATINEOVERDOSE, an individual,<br><br>Defendants. | Case No. 4:21-cv-7006-JST<br><br>**DECLARATION OF KATHERINE M. DUGDALE IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO RULE 26(f) CONFERENCE** |

-1-

154230244.3

I, Katherine Dugdale, declare as follows:

1.      I am an attorney licensed to practice law before the courts of the State of California.  I am an attorney at Perkins Coie LLP, and counsel in this action for Plaintiff Twitch Interactive, Inc. ("Twitch").  I submit this declaration in support of Twitch's Ex Parte Application for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference.  I have personal knowledge of the facts stated herein and, if called upon, could and would testify competently thereto under oath.

2.      Beginning in or about August 2021, Twitch received numerous reports of Twitch streamers whose channels were raided and spammed with hate from bot accounts spewing racist, sexist, and homophobic language and content ("hate raids").

3.      Twitch immediately started investigating who was responsible for the hate raids.

4.      Through reports submitted to Twitch via Twitch's reporting tool and social media sites (such as Twitter), Twitch was able to identify several actors involved in the hate raids, including two individuals operating on Twitch as CruzzControl and CreatineOverdose.  Through its investigation, Twitch identified several accounts associated with CreatineOverdose that were operated by a real person, not bots.  Twitch then identified key information associated with each account, as well as additional accounts owned by CruzzControl and CreatineOverdose.  Twitch banned CruzzControl's and CreatineOverdose's respective Twitch accounts and a number of alternate accounts created by the same individuals.

5.      The email address goomlygoom@gmail.com is linked to CreatineOverdose's Twitch account.

6.      CreatineOverdose used tools to hide their true IP address and location.  They also used multiple "dummy" email accounts to hide their identity.

7.      Using the information Twitch had uncovered about CreatineOverdose, Twitch searched public records for additional information about CreatineOverdose.  Twitch also searched the Internet for social media and video-game related communities that use CreatineOverdose and similar usernames.  Through these searches, Twitch identified a single Steam account that had

154230244.3

used the username "CreatineOverdose" (Steam ID: 124494422 / SteamID64: 7656119820925473).

8.      CreatineOverdose's actions were targeted at the Twitch community of users. Information about those users is stored on Twitch servers located in California.

9.      At my direction, on October 22, 2021, a copy of the Amended Complaint and a waiver of service form, among other documents, were sent to the following email address: goomlygoom@gmail.com.  The email and attachments are attached hereto as Exhibit A. CreatineOverdose was asked to identify themself and waive service.  CreatineOverdose has not responded.

10.     Attached hereto as Exhibit B is a copy of the website located at https://store.steampowered.com/about/ captured on November 15, 2021.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Los Angeles, California this 15th day of November 2021.


 /s/Katherine M. Dugdale
Katherine M. Dugdale

154230244.3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TWITCH INTERACTIVE, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>   v.<br><br>CHRIS VOSTERMANS, an individual; CREATINEOVERDOSE, an individual,<br><br>         Defendants. | Case No. 4:21-cv-7006-JST<br><br>**[PROPOSED] ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS PRIOR TO RULE 26(f) CONFERENCE**<br><br>**[L. Civ. R. 7-10]** |

[PROPOSED] ORDER
CASE NO. 4:21-cv-7006-JST

154646619.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

Before the Court is Plaintiff Twitch Interactive, Inc.'s *Ex Parte* Application for Leave to Serve Third-Party Subpoenas Prior to a Rule 26(f) Conference.  Having considered Twitch's Application and all other pleadings and papers on file in this matter, the Court hereby GRANTS the *Ex Parte* Application.

   **IT IS SO ORDERED.**

DATED: _____

                                                  By: _____
                                                          Hon. Jon S. Tigar
                                                          United States District Judge

154646619.1