UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWITCH INTERACTIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CREATINEOVERDOSE, et al., <br><br> Defendants. | Case No. 21-cv-07006-JST <br><br> **ORDER GRANTING MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE AND GRANTING MOTION FOR DEFAULT JUDGMENT** <br><br> Re: ECF Nos. 58, 69, 70 |

Before the Court is Plaintiff Twitch Interactive, Inc.'s ("Twitch") motion for de novo determination of dispositive matter referred to Magistrate Judge Sallie Kim. ECF No. 70. The Court grants Twitch's motion and adopts the remainder of Judge Kim's report and recommendation in full. ECF No. 69.

## I.   BACKGROUND

### A.   Factual Background

Twitch is a "real-time video service" where community members can view content spanning "video games, entertainment, sports, creative arts and more." ECF No. 40 ¶ 17. Twitch "streamers" are individuals who "share live content" on the website to "engage and entertain their viewers." *Id.* ¶ 18. Streamers must create a Twitch account, while viewers may watch streams without an account. *Id.* ¶ 24. Twitch streamers and viewers may also use a chat function to communicate on Twitch. *Id.* However, only viewers who create a Twitch account can post comments on the chat. *Id.* A streamer's chat panel is open any time that individual is streaming on Twitch, thereby allowing viewers to "post comments . . . to encourage the streamer, provide support, and send Twitch-specific emojis." *Id.* ¶ 22.

To use or access Twitch services, all users must agree to be bound by Twitch's Community Guidelines and Terms of Service. *Id.* ¶ 28. Twitch's Community Guidelines specifically ban "discrimination, denigration, harassment, or violence based on . . . race, ethnicity, color, caste, national origin, immigration status, religion, sex, gender identity, sexual orientation, disability, serious medical condition, and veteran status." *Id.* ¶ 28, 35. Twitch's Terms of Service "prohibit users from creating, uploading, transmitting, or streaming any content that is unlawful, defamatory, obscene, pornographic, harassing, threatening, abusive, or otherwise objectionable." *Id.*

Beginning in August 2021, Defendants Mango and CreatineOverdose (collectively "Defendants") began attacking Twitch's users with hateful content, in violation of the Community Guidelines and Terms of Service. *Id.* ¶ 43. These so-called "hate raids" disseminated obscene text—including racial slurs, personally identifying information, and malicious links—via fraudulent, bot-powered accounts that facilitated large-scale attacks. *Id*. ¶ 44. On August 15, 2021, CreatineOverdose used bot software to "spam Twitch channels with racial slurs, graphic descriptions of violence against minorities, and claims that the hate raiders are the 'K K K.'" *Id.* ¶ 45. Around this time, Mango also participated in hate raids and allegedly "coordinated others' efforts to conduct hate raids" by operating a third-party online platform where individuals could collectively organize their attacks. *Id.* ¶ 47. Additionally, Mango "swatted"[1] a trans woman while she was streaming on Twitch and "doxed"[2] several other Twitch users. *Id.* ¶ 48. Not only are hate raids highly offensive, but they also disrupt streamers and prevent them from engaging with intended viewers. *Id.* ¶ 50. The attacks "pushed some victims to stop streaming on Twitch until the hate raids end[ed]," thereby "eliminating an important source of revenue for them." *Id.* ¶ 51.

Following Defendants' hate raids, Twitch "expended significant resources" investigating the incidents and taking remedial action. *Id.* ¶ 59. It engineered technological fixes to stop further

---

[1] "Swatting" is a term for the "criminal harassment tactic of making a false call to emergency services (e.g., 911) in an attempt to bring about a dispatch of a large number of armed police officers to a particular address, without the resident's knowledge[.]" ECF No. 40 ¶ 48.
[2] "Doxing" occurs when "private or identifying information about a particular individual" is published on the internet "with malicious intent." ECF No. 40 ¶ 49.

2

hateful conduct, implemented stricter identity controls via machine learning algorithms, and identified (and subsequently banned) the responsible individuals from the Twitch.tv platform. *Id.* ¶¶ 52, 59. Moreover, Twitch "mobilized its communications staff to address the community harm flowing from the hate raids[,]" and "solicited and responded to streamers' and users' comments and concerns." *Id.* ¶ 59.

"Despite these efforts, Defendants' actions [remain] ongoing—they continue to promote and engage in hate raids." *Id.* ¶ 8. Although Twitch permanently banned Defendants' known Twitch accounts, Defendants "evaded Twitch's bans by creating new, alternate [] accounts, and continually alter[] their self-described 'hate raid code' to avoid detection and suspension by Twitch." *Id.* ¶ 5. Twitch alleges that, until stopped, "Defendants will continue to harass and disrupt the Twitch community with hate raids." *Id.* ¶ 8.

### B. Procedural History

On September 9, 2021, Twitch filed a complaint against CreatineOverdose and CruzzControl, another participant in the hate raids. ECF No. 1.[3] Twitch subsequently sought discovery from third parties in an attempt to discover the identities of perpetrators of the raids. Following this discovery, Twitch named Mango as a Defendant in its second amended complaint. ECF No. 40. After Twitch was unable to locate physical addresses for CreatineOverdose or Mango for service of process, this Court granted Twitch's request to serve both Defendants via alternative means. ECF Nos. 37, 44. Twitch then served both CreatineOverdose and Mango but neither filed an answer or response. ECF Nos. 45, 46. Twitch then moved for entry of default judgment on May 2, 2023. ECF No. 58. The Court referred this matter to a Magistrate Judge for report and recommendation on May 9, 2023. ECF No. 59.

On July 20, 2023, Judge Kim issued a report and recommendation in which she recommended granting in part and denying in part Twitch's motion for default judgment. ECF No. 69. Twitch timely moved for de novo determination of certain portions of Judge Kim's report and recommendation on August 3, 2023, objecting to only the denial of Defendants' liability for

---

[3] On February 9, 2022, Defendant Chris Vostermans, also known as CruzzControl, was voluntarily dismissed by Twitch. ECF No. 27.

fraud in the inducement. ECF No. 70.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## III. LEGAL STANDARD

"[A] district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* Civ. L.R. 72–3(a). A de novo review requires the Court to "consider the matter anew, as if no decision had been rendered below," and reach its own conclusions regarding the portions of the Magistrate Judge's findings and recommendations to which objections were made. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## IV. DISCUSSION

Twitch moves for de novo review of one part of the report and recommendation issued by Judge Kim—specifically, the denial of Defendants' liability for fraud in the inducement.

To state a claim for fraud in the inducement, the plaintiff must allege: "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d); justifiable reliance; and (e) resulting damage." *Parino v. Bidrack, Inc*., 838 F. Supp. 2d 900, 906 (N.D. Cal. 2011). "Plaintiff's allegations must be sufficiently detailed to meet the heightened [Federal Rule of Civil Procedure 9(b)] pleading standard for fraud." *Id.* This standard demands that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

In holding that Twitch has not adequately plead a claim for fraud in the inducement, Judge Kim reasoned that "Plaintiff has not directly plead that Defendants sought to induce reliance based on their actions. Further, although Plaintiff states any reliance on its part was justified, it does not provide reasons for that justification." ECF No. 69 at 7 (citing ECF No. 40 ¶¶ 77, 82–83).

As to the first finding, the Court disagrees that Twitch must "directly plead that Defendants sought to induce reliance." *Id.* The plain language of Rule 9(b) makes clear that the heightened

4

pleading standard does not apply to intent. Moreover, the Ninth Circuit has expressly stated that "[a]n intent to defraud may be inferred from circumstantial evidence." *Manta v. Chertoff*, 518 F.3d 1134, 1142 (9th Cir. 2008) (citing *United States v. Milwitt*, 475 F.3d 1150, 1159 (9th Cir. 2007)). Twitch has pleaded the following:

- After Defendants' "known Twitch accounts" were "suspend[ed] and eventually permanently bann[ed]," Defendants "evaded Twitch's bans by creating new, alternate Twitch accounts, and continually [altered] their self-described 'hate raid code' to avoid detection and suspension by Twitch." ECF No. 40 ¶ 5.
- "Users [like Defendants] who participate in Twitch's chat function are [] required to create an account." *Id.* ¶ 24.
- "Defendants had no intention of abiding by the Terms and made fraudulent representations to the contrary to Twitch . . . with the intent of defrauding Twitch." *Id.* ¶ 78.
- "Based upon Defendants' intentional misrepresentations, Twitch was induced to allow them to register accounts using Twitch's Services. Had Twitch known of Defendants' true intentions, Twitch would not have allowed them to register accounts and access the Twitch Services." *Id.* ¶ 80.

Because Twitch has generally alleged that Defendants concealed their identifies to circumvent Twitch's ban on their accounts, gain access to Twitch's chat function, and continue their hate raid attacks, Twitch has sufficiently plead that Defendants intended to defraud them.

Turning to Judge Kim's second finding, the Court likewise disagrees that Twitch has not adequately "provid[ed] reasons" justifying its reliance on Defendants' misrepresentation that they intended to comply with the Terms of Service. ECF No. 69 at 7. Twitch has alleged that Defendants knew that Twitch "barred" them from its platform, and "unbeknownst to Twitch," Defendants "again . . . concealed their identities and other personally identifying information (such as email addresses and IP addresses)" in order to create new accounts from which to conduct hate raids. ECF No. 40 ¶¶ 81, 82. Viewed under the heightened pleading standard, the Court finds that

Twitch has adequately provided reasons justifying its reliance on Defendants' misrepresentation.[4]

## CONCLUSION

For the foregoing reasons, the Court grants Twitch's motion and finds that Defendants fraudulently induced Twitch into granting them access to Twitch Services. The Court also adopts the remainder of Judge Kim's report and recommendation in full. Default judgment against Defendants is granted. Twitch is awarded $328,164 in damages. This judgment shall accrue interest, compounded annually, pursuant to 28 U.S.C. § 1961.

Defendants and their officers, agents, representatives, servants, employees, successors and assigns, and all others in active concert or participation with Defendants are permanently enjoined from: (a) using or accessing the Twitch Services; (b) posting content on the Twitch Services, including in the Twitch chat function, that is prohibited by the Terms, including racist, homophobic, xenophobic, or any other harassing content; and (c) assisting any individual or company in engaging in the conduct described in 1(a)-(b) above.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February 5, 2024

_____
JON S. TIGAR
United States District Judge

---

[4] Because the Court agrees with Twitch that it has both alleged sufficient facts demonstrating that Defendants intended to defraud them and that Twitch was justified to rely on Defendants' misrepresentation, the Court does not reach Twitch's argument that, under the law of the case doctrine, the Court has "already implicitly found that Twitch stated a claim for fraud in the inducement." ECF No. 70 at 6.